## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| ATSCO HOLDINGS CORP. ) <br> 25 Leonberg Road ) <br> Cranberry Twp, PA 16066ATSCO ) <br> ) <br> and ) <br> ) <br> HY-TECH MACHINE, INC. ) <br> 25 Leonberg Road ) <br> Cranberry Twp, PA 16066 ) <br> ) <br>          Plaintiffs, ) <br> ) <br>     -v- ) <br> ) <br> AIR TOOL SERVICE COMPANY ) <br> (now known as X5432, Inc.) ) <br> 7722 Metric Drive ) <br> Mentor, OH 44060 ) <br> ) <br> and ) <br> ) <br> RICK J. SABATH ) <br> 7722 Metric Drive ) <br> Mentor, OH 44060 ) <br> ) <br>          Defendants. | Case No. 1:15-cv-1586 <br><br> (Judge _____) <br><br><br> **COMPLAINT** |

For their Complaint, Plaintiffs ATSCO Holdings Corp. ("ATSCO") and Hy-Tech Machine, Inc. ("Hy-Tech") respectfully state and allege as follows:

1. Plaintiff ATSCO is a Delaware corporation with its principal place of business in Pennsylvania.

2. Plaintiff Hy-Tech is a Delaware corporation with its principal place of business in Pennsylvania. Hy-Tech and ATSCO are, collectively, the "Plaintiffs."

3. Defendant Air Tool Service Company (now known as X5432, Inc. ("Air Tool Service Co.")) is an Ohio corporation with its principal place of business in Ohio. Air Tool Service Co. was the operator of a business involved in designing, engineering, and manufacturing pneumatic motors and tools for certain applications (the "Business").

4. Defendant Rick J. Sabath ("Sabath") is, upon information and belief, a citizen of North Carolina. Sabath was and, upon information and belief, is the sole shareholder of Air Tool Service Co. Air Tool Service Co. and Sabath are, collectively, the "Defendants" and, along with the Plaintiffs are "Parties."

5. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. section 1332 due to the complete diversity of the parties and an amount in controversy greater than the jurisdictional limit.

6. Each of the defendants is subject to personal jurisdiction in this Court due to the minimum contacts of the defendants with the Court as well as a forum selection clause in the agreement between the parties, as described further herein.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

7. On or about August 13, 2014, the Parties executed that certain Asset Purchase Agreement attached hereto as Exhibit A (the "Agreement") and consummated the transactions contemplated thereby.

8. Pursuant to the Agreement, Defendant Air Tool Service Co. sold substantially all of the assets of the Business to ATSCO. The purchase price for the Business paid by ATSCO to Defendant and its shareholder, Sabath, was $7,658,540 as was to be adjusted pursuant to the terms of the Agreement.

9. Specifically, the purchase price was to be adjusted pursuant to a closing statement and working capital adjustment. Defendants have refused to satisfy the working capital

adjustment despite it being owed beyond any reasonable contention. The amount owed is $100,928.

10. Moreover, $387,500 of the purchase price was placed in escrow in connection with adjustments and to deal with certain disputes.

11. In the Agreement, Defendants made many representations and warranties concerning the Business. Among them:[1]

- in section 3.6 of the Agreement, Defendants represented and warranted that the financial statements provided to Plaintiffs were, among other things, true and complete and fairly presented the financial position of Defendants;

- in section 3.7 of the Agreement, Defendants represented and warranted that there were no debts or liabilities not reflected on the balance sheet or financial statement;

- in section 3.11 of the Agreement, Defendants represented and warranted that it was the owner of all Intellectual Property used in the operation of the Business;

- in section 3.13 of the Agreement, Defendants represented and warranted that the inventories purchased in the transaction were finished and saleable in the ordinary course of business;

- in section 3.17 of the Agreement, Defendants represented and warranted that it owned all of the assets reflected on the balance sheet and that all of these were in good operating condition and well maintained.

12. After the closing of the transaction subject to the Agreement, Plaintiffs have learned that many of Defendants representations and warranties were not true.

---

[1] Plaintiffs incorporate the full text of each section of the Agreement referenced here and intend the summary of the provisions to be for convenience, and not to change the full language in the Agreement.

**Purchase Price Adjustment in Section 2.3.2.3, Breach of Sections 3.6 and 3.13**

13. For example, Plaintiffs have discovered that certain grinders and grinder parts inventory at closing relating to a customer, ATA, valued at $93,313[2] on the balance sheet and financial statements of Defendants, were non-saleable and without value.

14. Two tools manufactured specifically for a customer, Michigan Pneumatic, valued on the balance sheet and financial statements of Defendants at approximately $13,000, similarly are non-saleable and without value.

15. Parts manufactured prior the closing for a customer, TorcUp, which were valued on the balance sheet and financial statements of Defendants at approximately $8,000, were defective due to a contaminant coating the threads rendering such tools unrepairable and non-saleable and without value.

16. Other parts and assemblies which were valued on the balance sheet and financial statements of Defendants at approximately $90,000 were unusable and unrepairable due to poor quality, incorrect machining, burrs and contamination and are therefore also without value.

17. Still other parts were only usable after Plaintiffs invested substantial funds and time to make them usable, totaling approximately $6,000.

**Breach of Section 3.17 (Regarding Ownership & Condition of Assets)**

18. An additional issue arose with respect to an Okuma MacTurn computerized numerical controlled (CNC) manufacturing machine. This machine was not in good operating condition and repair, nor was the machine reasonably maintained at the time of the closing. The non-conforming condition and inadequate repair and maintenance of this machine caused it to stop functioning soon after the closing and caused Plaintiffs to suffer substantial damage.

---

[2] Plaintiffs have endeavored to plead their damages with specificity to aid the parties and the Court. However, Plaintiffs reserve the right to amend their damages contentions as more information is learned and as damages continue to accrue during the course of the litigation.

4

19. Specifically, Plaintiffs invested approximately $32,714.36 in labor and parts so far to make needed repairs to the Okuma MacTurn machine.

20. The Okuma MacTurn machine will require at least another $45,000 in parts in order for the machine to be operational.

21. Plaintiffs expect to be invoiced approximately $30,000 more in labor charges in connection with needed work to place the Okuma MacTurn machine into operating condition.

22. Moreover, loss of use of the Okuma MacTurn machine has caused Plaintiffs substantial operating losses and productivity believed to be in excess of $100,000.

23. In addition, Defendants sold a different Okuma CNC manufacturing machine prior to closing. The remaining manufacturing machines were not sufficient in nature, quality, or quantity (see section 3.17(c) of the Agreement) to permit Plaintiffs to continue to conduct the business after the closing. Defendants' conduct in this regard has caused Plaintiffs damages believed to be in excess of $130,000.

24. Still further, Plaintiffs have learned that certain accounts that were appropriately payable to Plaintiffs were paid instead to the Defendants. These accounts total $2715.42.

### Breach of Section 3.11(c) (Regarding Ownership of Intellectual Property)

25. Defendants' representations with respect to intellectual property (section 3.11 of the Agreement) were materially false. Specifically, as a result of a significant percentage of the product plans and drawings not being materially accurate and complete, Plaintiffs have been forced, and will be forced in the future, to incur substantial costs to correct and complete the drawings to produce the parts and products to which they relate, estimated at approximately $54,000.

26. Moreover, following the closing, Plaintiff learned that a customer, TorcUp, has claimed ownership of intellectual property relating to certain of the products that the business manufactures for TorcUp, which intellectual property has been represented in the transaction to have been sold by Defendants to Plaintiffs, causing damage to Plaintiffs in an amount to be proven at trial.

### Breach of Section 3.7(c) (Regarding Liabilities and Warranty Claims)

27. Plaintiffs learned post-closing that there existed approximately $20,000 in credits owed to a customer (Michigan Pneumatic) for warranty claims owed to such customer related to product completed pre-closing. These credits were not reserved for on the balance sheet.

### COUNT I – BREACH OF CONTRACT

28. Plaintiffs restate and incorporate by reference the prior paragraphs of this Complaint.

29. As alleged herein and as contained in the Agreement, Defendants made representations to Plaintiffs in the Agreement.

30. These representations were material and relied upon by Plaintiffs.

31. These representations were false.

32. Defendants' false representations caused Plaintiffs damage as described herein, as continue to accrue, and will be proven at trial.

### COUNT II – UNJUST ENRICHMENT

33. Plaintiffs restate and incorporate by reference the prior paragraphs of this Complaint.

34. Through the substantial monies paid by Plaintiffs to Defendants, Plaintiffs have conferred a benefit on Defendants.

35. Defendants are aware of this benefit.

36. It would be unjust under the circumstances alleged here as will be further proven at trial to allow Defendants to retain these benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as set forth below.

A. Actual damages, statutory damages, punitive or treble damages, and such other relief provided by the statues cited herein;

B. Pre-judgment and post-judgment interest on such monetary relief;

C. The costs of bring this suit, including reasonable attorneys' fees; and

D. All other relief to which Plaintiffs may be entitled at law or equity.

DATED: August 10, 2015

                Respectfully submitted,

                */s/ Brian P. Muething*
                Brian P. Muething (0076315)
                One East Fourth St.
                Suite 1400
                Cincinnati, Ohio 45202
                Phone: (513) 639-3814
                Fax: (513) 579-6457
                bmuething@kmklaw.com
                *Attorney for Plaintiffs ATSCO Holdings Corp.*
                *and Hy-Tech Machine, inc.*

OF COUNSEL:
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
(513) 579-6400

## **INSTRUCTIONS TO THE CLERK**

    Please serve the Complaint upon Defendants at the addresses listed in the caption of the Complaint by certified mail, return receipt requested, returnable according to law.

6264914.2