UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ATSCO HOLDINGS CORP., *et al.* ) | CASE NO. 1:15-CV-1586 |
| ) | |
| *Plaintiffs*, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| v. ) | |
| ) | |
| AIR TOOL SERVICE COMPANY, *et al.* ) | |
| ) | |
| *Defendants*. ) | |

**DEFENDANTS' BRIEF REGARDING ISSUE OF NOTICE UNDER THE INDEMNIFICATION PROVISION OF ASSET PURCHASE AGREEMENT**

By and through undersigned counsel, Defendants Air Tool Service Company, n/k/a X5432, Inc. ("Air Tool") and Rick J. Sabath ("Sabath") (collectively, with Air Tool Service Co., the "Defendants"), submit the following Brief in accordance with the Court's Order dated July 21, 2017 (ECF # 58).

**I.   INTRODUCTION AND STATEMENT OF FACTS**

This action for breach of contract and unjust enrichment was scheduled for a bench trial, which was to commence on July 31, 2017. During the Final Pre-Trial on July 20, 2017, the Court questioned the parties regarding the indemnification provision of the Asset Purchase Agreement (the "Agreement"), attached hereto as <u>Exhibit A</u>. On July 21, 2017, the Court issued an Order instructing the parties to brief the issue of notice under the Agreement.

As discussed in Defendants' Trial Brief and herein, the claims Plaintiffs are attempting to assert in this case are subject to the indemnification provision of the Agreement. That provision required Plaintiffs to deliver Defendants notice of any purported claim for resolution pursuant to the terms of the Agreement. Plaintiffs failed to provide the required notice, and instead initiated

the instant lawsuit. Further, the parties agreed the indemnification provision was to be the "sole and exclusive remedy" for claims under the Agreement, and specifically waived the right to assert claims or causes of action for alleged breaches of representations or warranties or that otherwise related to the subject matter of the Agreement. Consequently, Plaintiffs' claims must fail as a matter of law.

### A. Plaintiffs' Claims.

Plaintiffs' claims for breach of contract and unjust enrichment are premised upon alleged breaches of representations or warranties contained in the Agreement. *See generally*, Amended Complaint (the "Complaint") (ECF # 4). Plaintiffs characterized these claims in their Trial Brief (ECF # 54) as follows:

| Claim | Plaintiffs' Characterization of Claim |
|---|---|
| Claim 1 | Poor Quality Parts |
| Claim 2 | Unsellable Inventory at Michigan Pneumatic |
| Claim 3 | Unsellable Inventory at TorcUp |
| Claim 4 | Poor Quality Parts Scrapped |
| Claim 5 | A/R Mispayment |
| Claim 6 | Working Capital Adjustment |
| Claim 7 | MacTurn Inefficiency, and Work Performed Elsewhere |
| Claim 8 | MacTurn Maintenance |
| Claim 9 | MacTurn Replacement |
| Claim 10 | Inaccurate Drawing and Plans[1] |

---

[1] This claim is alleged in Paragraph 25 of the Complaint and was abandoned by Plaintiffs in discovery, as set forth in Defendants' separately-filed (and unopposed) Motion in Limine, or, in the alternative, Motion for Partial Summary Judgment (ECF # 48).

*See* ECF # 54, at pp. 4-7. Plaintiffs contend such claims constitute breaches of representations and warranties in Sections 3.6, 3.7, 3.11, 3.13, and 3.17 of the Agreement. *See* Complaint, at ¶¶ 11, 13-27. All of these purported claims fall under the indemnification provision of the Agreement, discussed below.

B. **Relevant Contractual Provisions.**

The indemnification provision of the Agreement provides, in pertinent part:

**11.2 Indemnification**.

    11.2.1 General Indemnification Obligation of Seller and Shareholder. From and after the date hereof, Seller and Shareholder, jointly and severally, will reimburse, indemnify and hold harmless Purchaser and its directors, officers, employees, shareholders, successors and assigns (an "Indemnified Purchaser Party") against and in respect of any and all Actions, damages, losses, diminution in value, deficiencies, liabilities, assessments, fines, costs and expenses, including court costs, costs and expenses of investigation and reasonable attorneys fees (collectively, "Losses"), incurred or suffered by any Indemnified Purchaser Party that result from, relate to or arise out of:

    \*    \*    \*

    (b)    **any misrepresentation or breach of warranty** on the part of Seller and/or Shareholder **under this Agreement**;

    (c)    **nonfulfillment of any agreement or covenant** on the part of Seller and/or Shareholder **under this Agreement**; \* \* \*

*See* Exhibit A, at § 11.2. Under the Agreement, the parties agreed to a process for the resolution of such claims, which was to commence with the delivery of a Claim Notice:

**11.2.3 Method of Asserting Claims.**

    (a)    In the event that any Action, Claim or demand (collectively, "Claim") for which a party hereto has an obligation to provide indemnification (the "Indemnifying Party") would be liable to another party hereunder (the "Indemnified Party") is asserted against or sought to be collected from an Indemnified Party by a third party, **the Indemnified Party shall notify the Indemnifying Party of such Claim, specifying the nature of**

3

> **the Claim and the amount or the estimated amount thereof to the extent then feasible (which estimate shall not be conclusive of the final amount of the Claim) (the "Claim Notice").** The Indemnifying Party shall thereupon, at its sole cost and expense, assume the control of the defense, settlement or compromise of the Claim against the Indemnified Party with counsel of Indemnifying Party's choosing that is reasonably satisfactory to Indemnified Party. The failure to timely give a Claim Notice shall not relieve Indemnifying Party of its or his obligations hereunder, except and only to the extent that such failure shall result in any material prejudice to Indemnifying Party in defense of the Claim.
>
> \* \* \*
>
> (c) **In the event an Indemnified Party should have a Claim against Seller and/or Shareholder hereunder** that does not involve a Claim being asserted against or sought to be collected from it by a third party, **the Indemnified Party shall send a Claim Notice with respect to such Claim to Seller and/or Shareholder.**

See <u>Exhibit A</u>, at §11.2.3 (emphasis added); *see also id*. at § 13.6 (specifying the manner and method of delivery of "[a]ny and all notices or other communications or deliveries required or permitted to be given or made pursuant to any of the provisions of this Agreement[.]").  In spite of their contractual obligation, no Claim Notice was ever sent by Plaintiffs to Defendants. Instead of following the agreed-upon procedure for the resolution of their purported claims, Plaintiffs initiated the instant lawsuit in violation of the Agreement.

A further notice requirement was included in the Agreement to address issues related to inventory, the post-closing performance of an inventory count by Plaintiffs, and the preparation of a Closing Statement by Defendants.  Under Section 2.3.2.1 of the Agreement, Plaintiffs were required to perform a count of Air Tool's inventory and provide Defendants with an Inventory Acknowledgement within twenty (20) days after the Closing Date:

> **2.3.2.1 Inventory.** Not later than twenty (20) days after the Closing Date, a physical count of the Inventory (the "Inventory Count") will be taken by Michael Sivula, Nicholas Russell and Michael Turick, or if for any reason any of such

4

> persons does not take such Inventory Count, such other persons as may be reasonably acceptable to Purchaser and Seller (such acceptance, if any, to be evidenced by written agreement between Purchaser and Seller), in accordance with past practices of Seller and other reasonable procedures of Purchaser, as of the date of such Inventory Count. Purchaser shall give Seller reasonable advance notice of the Inventory Count and allow Shareholder to be physically present during such count. **Not later than twenty (20) days after the Closing Date, a roll-back (the "Roll-Back") of the Inventory Count (the "Roll-Back Inventory") to the Effective Time will be performed by employees of Purchaser. The Roll-Back will be performed in a manner consistent with the method utilized in preparing the Audited Financial Statements. A statement setting forth the Roll-Back Inventory based upon such Roll-Back (the "Inventory Acknowledgment"), will be delivered by Purchaser to Seller not later than twenty (20) days after the Closing Date**. The Roll-Back Inventory, as set forth in the Inventory Acknowledgement is hereby deemed final, conclusive and binding, absent manifest error.

*See* Exhibit A, at § 2.3.2.1 (emphasis added).  It is undisputed that Plaintiffs did not provide Defendants with an Inventory Acknowledgment until October 16, 2014 – sixty-two (62) days after the Closing Date.  *See* Inventory Acknowledgment, attached hereto as Exhibit B, *see also* Plaintiffs' Trial Brief at p. 10 (identified as PX-22).[2]  Plaintiffs' failure to timely provide the Inventory Acknowledgment, in turn, prevented Defendants from preparing the Closing Statement as set forth in Section 2.3.2.2 of the Agreement, and the resolution of any potential disputes in connection therewith, pursuant to the process outlined in Section 2.3.3 of the Agreement (which, incidentally, required submission of the matter to an independent accountant, or to arbitration for the determination of an independent account, if the parties could not agree).  *See* Exhibit A, at §§ 2.3.2.2 and 2.3.3.

Moreover, as part of the Agreement, Plaintiffs waived the right to assert the very claims or causes of action they are now asserting.  Pursuant to Section 11.5(c) of the Agreement:

> The parties acknowledge and agree that their sole and exclusive remedy with respect to any and all Claims (other than Claims arising from fraud, criminal activity or willful misconduct on the part of a party hereto in connection with the

---

[2] The Inventory Acknowledgment does not reference Section 11.2 of the Agreement, or purport to provide notice of any claims pursuant to it.

5

> transactions contemplated by this Agreement) for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement, shall be pursuant to the indemnification provisions set forth in this Article XI. In furtherance of the foregoing, **each party hereby waives, to the fullest extent permitted under Law, any and all rights, Claims and causes of Action for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement it may have against the other parties hereto and their Affiliates and each of their respective Representatives arising under or based upon Law, except pursuant to the indemnification provisions set forth in this Article XI.** * * *

*See* Exhibit A, at §11.5(c) (emphasis added). Because Plaintiffs failed to provide the required Claim Notice under the indemnification provision of the Agreement, and because Plaintiffs have specifically waived their right to pursue claims or causes of action for "breach of any representation, warranty . . . or otherwise relating to the subject matter of [the] Agreement," Plaintiffs' claims in this case fail as a matter of law.

## II. LAW & ANALYSIS

### A. Plaintiffs Failed to Provide Defendants with a Claim Notice as Required by the Indemnification Provision of the Agreement.

Under Ohio law, notice provisions in contracts operate as conditions precedent to a party's recovery of damages for breach when the parties expressly indicate such intent. *See, e.g., Moraine Materials Co. v. Cardinal Operating Co.*, 2nd Dist. Montgomery No. CA 16782, 1998 WL 785363, *6 (Ohio Ct. App. 2nd Dist. 1998) (notice provision in construction contract operated as condition precedent to claim for damages of default); *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 14 (2002) ("Notice provisions in insurance contracts are conditions precedent to coverage, so an insured's failure to give its insurer notice in a timely fashion bars coverage."). Consequently, "[i]t is well established under Ohio Contract Law that a party must comply with all express conditions to be performed in case of breach before it can claim damages by reason of the breach." *Au*

6

*Rustproofing Ctr., Inc. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir.1985), citing *Bell Bros. v. Robinson*, 28 Ohio C.D. 160, 164 (Ohio Ct. App. 6th Dist. 1916) ("[I]f the contract provides conditions to be performed by the [plaintiff] in case of a breach, the [plaintiff] must comply with such conditions before he can claim damages by reason of the breach."); *see also Tattletale Portable Alarm Systems, Inc. v. MAF Productions, Inc.*, S.D.Ohio No. 2:14-CV-00574, 2016 WL 5122545, *4 (S.D. Ohio Sept. 21, 2016) (same). A "right of action requiring notice as a condition precedent cannot be enforced unless the notice provided for has been given." *Au Rustproofing Ctr., Inc. v. Gulf Oil Corp.*, 755 F.2d at 1237. The burden of proving compliance with a condition precedent lies with the party asserting a right of action on the contract. *Moraine Materials Co.,* 1998 WL 785363 at *6, citing *Felicity-Franklin Local School Dist. Bd. of Educ. v. Nationwide Mut. Ins. Co.*, 56 Ohio Misc.2d 19, 20-21, 565 N.E.2d 618, 620 (C.P. 1989).

Here, the indemnification provision of the Agreement clearly and unambiguously applies to claims for (1) misrepresentation or breach of warranty on the part of Defendants under the Agreement; and (2) the non-fulfillment of any agreement or covenant on the part of Defendants under the Agreement. *See* Exhibit A, at § 11.2(b) and (c). Thus, Plaintiffs were required to provide Defendants with a Claim Notice for all of the claims they have asserted in this case. *See* Exhibit A, at §11.2.3; *see also id*. at § 13.6. Despite its clear and unambiguous terms, Plaintiffs cannot demonstrate compliance with the indemnification provision of the Agreement. In discovery, Defendants requested Plaintiffs to produce "any and all correspondence or other written documents between or among Plaintiff, Defendants, and/or any other person(s) concerning the allegations in the Complaint." *See* Exhibit C, at p. 14 (Request for Production No. 6). Plaintiffs did not produce any document purporting to be a Claim Notice in response to

Defendants' request, though such document, if it existed, would plainly be responsive and concern the allegations in the Complaint.  The reason is simple: no Claim Notice was ever sent.

The process negotiated by the parties and reflected in the Agreement made sense for a host of reasons.  It provided that any party allegedly in breach of the Agreement would receive timely notice of any purported claim and, if warranted, the ability to cure the issue without incurring the time, expense, business disruption, or risk of reputational injury traditionally associated with litigation.  Further, the Claim Notice requirement ensured no party would be materially prejudiced in defending against any claim raised.  *See* Exhibit A, at §11.2.3 ("The failure to timely give a Claim Notice shall not relieve Indemnifying Party of its or his obligations hereunder, **except and only to the extent that such failure shall result in any material prejudice to Indemnifying Party in defense of the Claim**.") (Emphasis added).  The intended wisdom of this process is illustrated by the nature of the claims Plaintiffs are now attempting to raise.  Such claims relate to highly technical machines, machine parts and inventory, which Plaintiffs have unilaterally determined to be "defective" or "non-conforming," scrapped or replaced without notice to Defendants, and now seek to hold Defendants liable, years later.  By failing to provide a Claim Notice, Plaintiffs' unilateral actions have materially prejudiced Defendants from being able to defend against these claims, in the first instance, and from being able to control the settlement or compromise of these claims as required under the Agreement.  Because Plaintiffs cannot demonstrate compliance with the indemnification provision of the Agreement, their claims must fail as a matter of law.

      B.      **Plaintiffs Specifically Waived their Claims Under the Agreement.**

Pursuant to Ohio law, terms in a contract "are to be given their plain, ordinary meaning unless: (1) expert testimony provides a different meaning, particular to the industry involved; (2)

8

some other meaning is clearly evident from the face or overall content of the instrument; or (3) manifest absurdity would result." *Salazar v. Progressive Northern Ins. Co.*, N.D.Ohio No. 1:13 CV 2653, 2014 WL 12596528, *2 (N.D. Ohio Sept. 30, 2014), citing *Constr. Interior Sys., Inc. v. Marriott Family Rests., Inc.*, 984 F.2d 749, 756 (6th Cir. 1993). And where contracting parties negotiate claim waivers as part of their agreement, such provisions are enforced. *See Inland Waters Pollution Controls, Inc. v. Marra/Majestic Joint Venture,* N.D.Ohio No. 1:06 CV 02697, 2009 WL 700773, *6 (N.D. Ohio Mar. 13, 2009) (granting judgment on the pleadings with regard to claims for breach of contract and indemnification, as parties had "negotiated a waiver of all claims related to performance of work under the [c]ontract[.]"). The Agreement at issue in this case contains such a waiver.

As part of the indemnification provision of the Agreement, Plaintiffs specifically waived the right to assert claims or causes of action of the type they are now asserting:

> The parties acknowledge and agree that their sole and exclusive remedy with respect to any and all Claims (other than Claims arising from fraud, criminal activity or willful misconduct on the part of a party hereto in connection with the transactions contemplated by this Agreement) for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement, shall be pursuant to the indemnification provisions set forth in this Article XI. In furtherance of the foregoing, **each party hereby waives, to the fullest extent permitted under Law, any and all rights, Claims and causes of Action for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement it may have against the other parties hereto and their Affiliates and each of their respective Representatives arising under or based upon Law, except pursuant to the indemnification provisions set forth in this Article XI.** * * *

*See* Exhibit A, at §11.5(c) (emphasis added). Plaintiffs have not alleged fraud, criminal activity, or willful misconduct. Thus, the "sole and exclusive remedy" for Plaintiffs' purported claims is pursuant to the indemnification provision of the Agreement (which they have failed to comply with). Plaintiffs have specifically waived their right to pursue claims or causes of action for

9

"breach of any representation, warranty . . . or otherwise relating to the subject matter of [the] Agreement," which is the entirety of their Complaint in this case.  See <u>Exhibit A</u>, at §11.5(c).  Consequently, Plaintiffs' claims fail as a matter of law.

### III.     CONCLUSION

Plaintiffs failed to provide notice of their purported claims in accordance with the indemnification provision of the Agreement, and have specifically waived their right to pursue claims or causes of action for "breach of any representation, warranty . . . or otherwise relating to the subject matter of [the] Agreement."  Accordingly, Plaintiffs' claims in this case must fail as a matter of law.

Respectfully submitted,

/s/ Tim L. Collins
Thomas J. Scanlon (0017308)
tscanlon@collins-scanlon.com
Tim L. Collins (0033116)
tcollins@collins-scanlon.com
Joseph H. Gutkoski (0086285)
jgutkoski@collins-scanlon.com
COLLINS & SCANLON LLP
3300 Terminal Tower
50 Public Square
Cleveland, Ohio 44113-2289
Telephone: 216-696-0022
Facsimile: 216-696-1166

and

Mark A. DiCello (0063924)
madicello@dlcfirm.com
DICELLO LEVITT & CASEY, LLC
7556 Mentor Avenue
Mentor, Ohio 44060
Telephone: 440-953-8888
Facsimile: 440-953-9138

*Counsel for Defendants Air Tool Service Company, n/k/a X5432, Inc. and Rick J. Sabath*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of August, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties not receiving service through the Court's electronic filing system will be served by regular U.S. mail. Parties may access this filing through the Court's system.

Brian P. Muething
bmuething@kmklaw.com
Jacob D. Rhode
jrhode@kmklaw.com
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202

*Counsel for Plaintiffs*
*ATSCO Holdings Corp. and*
*Hy-Tech Machine, Inc.*

/s/ Tim L. Collins
*One of the Attorneys for Defendants Air Tool Service Company, n/k/a X5432, Inc. and Rick J. Sabath*

*P:\Melinda\Sabath, Rick J\ATSCO Suit\Motions & Pleadings\(2017-08-04) Brief re Indemnification Provision.docx*