UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ATSCO HOLDINGS CORP., *et al.* | ) | CASE NO. 1:15-CV-1586 |
| | ) | |
| *Plaintiffs*, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| AIR TOOL SERVICE COMPANY, *et al.* | ) | |
| | ) | |
| *Defendants*. | ) | |

---

**DEFENDANTS' REPLY BRIEF REGARDING ISSUE OF NOTICE UNDER THE INDEMNIFICATION PROVISION OF ASSET PURCHASE AGREEMENT**

---

By and through undersigned counsel, Defendants Air Tool Service Company, n/k/a X5432, Inc. ("Air Tool") and Rick J. Sabath ("Sabath") (collectively, with Air Tool, the "Defendants"), submit the following Reply Brief in accordance with the Court's Orders dated July 21, 2017 (ECF # 58) and August 17, 2017.

## INTRODUCTION

Defendants' opening Brief (ECF # 59) explained that all of Plaintiffs' claims fail for two (2) reasons. First, Plaintiffs were required under the Agreement to provide Defendants with a Claim Notice for their purported claims and they have failed to do so. The Plantiffs' failure to demonstrate compliance with this condition precedent bars their claims. *See* ECF # 59, at pp. 6-8. Second, pursuant to the Agreement, Plaintiffs specifically waived all claims or causes of action for "breach of any representation, warranty . . . or otherwise relating to the subject matter of [the] Agreement," which is the entirety of their Complaint in this case. *See id.*, at pp. 8-10,

and Exhibit A thereof, at §11.5(c).  As a result, all of Plaintiffs' claims must fail as a matter of law.

Plaintiffs' Response Brief (ECF # 61) presents four (4) arguments, all of which go to Defendants' first argument, and none of which have merit.  Based upon the reasons and authorities cited on pages 8 through 10 of Defendants' opening Brief, which have gone unrebutted, this Court should find that Plaintiffs' claims fail as a matter of law.  As discussed below, the arguments Plaintiffs *have* raised in their Response Brief, with regard to Defendants' first argument, do not withstand scrutiny.  Consequently, the Court should find that Plaintiffs' claims fail as a matter of law.

## ARGUMENT

### A. Plaintiffs Failed to Provide a Claim Notice for any of their Purported Claims, as Required by the Agreement.

Plaintiffs' Response Brief does not dispute that the indemnification provision of the Agreement applies to claims for (1) misrepresentation or breach of warranty on the part of Defendants under the Agreement; and (2) the non-fulfillment of any agreement or covenant on the part of Defendants under the Agreement.  *See* ECF # 59, at Exhibit A thereof, § 11.2(b) and (c).  Nor do Plaintiffs dispute that they were required to provide Defendants with a Claim Notice for all of the claims they have asserted in this case.  *See id.,* at Exhibit A thereof, §§ 11.2.3 and 13.6.  Plaintiffs' Response Brief does not rebut any of the authorities cited in Defendants opening Brief, which hold that "[i]t is well established under Ohio Contract Law that a party must comply with all express conditions to be performed in case of breach before it can claim damages by reason of the breach."  *Au Rustproofing Ctr., Inc. v. Gulf Oil Corp*., 755 F.2d 1231, 1237 (6th Cir.1985), citing *Bell Bros. v. Robinson*, 28 Ohio C.D. 160, 164 (Ohio Ct. App. 6th Dist. 1916); *see also Tattletale Portable Alarm Systems, Inc. v. MAF Productions, Inc*., S.D.Ohio

2

No. 2:14-CV-00574, 2016 WL 5122545, *4 (S.D. Ohio Sept. 21, 2016) (same).  Nor do Plaintiffs contest that they bear the burden of proving compliance with all conditions precedent, as the party asserting a right of action on the contract.  *Moraine Materials Co. v. Cardinal Operating Co.*, 2ⁿᵈ Dist. Montgomery No. CA 16782, 1998 WL 785363, *6 (Ohio Ct. App. 2ⁿᵈ Dist. 1998), citing *Felicity-Franklin Local School Dist. Bd. of Educ. v. Nationwide Mut. Ins. Co.*, 56 Ohio Misc.2d 19, 20-21, 565 N.E.2d 618, 620 (C.P. 1989).

Instead, Plaintiffs attempt to skirt the issue by pointing to a separate document required under the Agreement (the Inventory Acknowledgment) along with a smattering of correspondence which Plaintiffs failed to produce in discovery and have now improperly attached to their Response Brief, in the apparent hope that this Court will craft a viable Claim Notice out of these materials where none exists.  This Court should not take the bait.

As noted in Defendants' Brief, the Agreement sets forth a specific process for the resolution of claims such as the ones Plaintiffs have brought in this litigation, which was to commence with the delivery of a Claim Notice:

**11.2.3  Method of Asserting Claims.**

> (a)     In the event that any Action, Claim or demand (collectively, "Claim") for which a party hereto has an obligation to provide indemnification (the "Indemnifying Party") would be liable to another party hereunder (the "Indemnified Party") is asserted against or sought to be collected from an Indemnified Party by a third party, **the Indemnified Party shall notify the Indemnifying Party of such Claim, specifying the nature of the Claim and the amount or the estimated amount thereof to the extent then feasible (which estimate shall not be conclusive of the final amount of the Claim) (the "Claim Notice").** The Indemnifying Party shall thereupon, at its sole cost and expense, assume the control of the defense, settlement or compromise of the Claim against the Indemnified Party with counsel of Indemnifying Party's choosing that is reasonably satisfactory to Indemnified Party. The failure to timely give a Claim Notice shall not relieve Indemnifying Party of its or his obligations hereunder,

except and only to the extent that such failure shall result in any material prejudice to Indemnifying Party in defense of the Claim.

\*        \*        \*

(c)    **In the event an Indemnified Party should have a Claim against Seller and/or Shareholder hereunder** that does not involve a Claim being asserted against or sought to be collected from it by a third party, **the Indemnified Party shall send a Claim Notice with respect to such Claim to Seller and/or Shareholder.**

*See* ECF # 59, at <u>Exhibit A</u> thereof, at §11.2.3 (emphasis added); *see also id.* at § 13.6 (specifying the manner and method of delivery of "[a]ny and all notices or other communications or deliveries required or permitted to be given or made pursuant to any of the provisions of this Agreement[.]").

Arguing they have complied with this provision, Plaintiffs primarily rely upon a separate and distinct document required to be delivered by them under the Agreement, the Inventory Acknowledgment.[1]  However, as noted in Defendants' opening Brief, this document does not reference Section 11.2 of the Agreement, or purport to provide notice of any claims pursuant to

---

[1] Under the Agreement, Plaintiffs were required to perform a count of Air Tool's inventory and provide Defendants with an Inventory Acknowledgement within twenty (20) days after the Closing Date:

**2.3.2.1 Inventory.** Not later than twenty (20) days after the Closing Date, a physical count of the Inventory (the "Inventory Count") will be taken by Michael Sivula, Nicholas Russell and Michael Turick, or if for any reason any of such persons does not take such Inventory Count, such other persons as may be reasonably acceptable to Purchaser and Seller (such acceptance, if any, to be evidenced by written agreement between Purchaser and Seller), in accordance with past practices of Seller and other reasonable procedures of Purchaser, as of the date of such Inventory Count. Purchaser shall give Seller reasonable advance notice of the Inventory Count and allow Shareholder to be physically present during such count. **Not later than twenty (20) days after the Closing Date, a roll-back (the "Roll-Back") of the Inventory Count (the "Roll-Back Inventory") to the Effective Time will be performed by employees of Purchaser. The Roll-Back will be performed in a manner consistent with the method utilized in preparing the Audited Financial Statements. A statement setting forth the Roll-Back Inventory based upon such Roll-Back (the "Inventory Acknowledgment"), will be delivered by Purchaser to Seller not later than twenty (20) days after the Closing Date.** The Roll-Back Inventory, as set forth in the Inventory Acknowledgement is hereby deemed final, conclusive and binding, absent manifest error.

*See* ECF # 59 at <u>Exhibit A</u>, § 2.3.2.1 (emphasis added).  Plaintiffs failed to provide Defendants with an Inventory Acknowledgment until October 16, 2014 – sixty-two (62) days after the Closing Date.  *See* ECF # 59, at <u>Exhibit B</u>.

4

it.  *See* ECF # 59, at p. 5.  To be sure, the first sentence of this document plainly states, "[p]lease accept this letter and its attachments **as the Inventory Acknowledgment pursuant to Section 2.3.2.1 of the Asset Purchase Agreement[.]**"  *See* ECF # 59, at Exhibit B thereof (emphasis added).  At no point does the Inventory Acknowledgment reference Section 11.2 of the Agreement or purport to be a Claim Notice.  Nor does it remotely suggest many of the claims Plaintiffs have now brought before this Court, including the largest of Plaintiffs' claims regarding the Okuma machine.

The actual content of the Inventory Acknowledgment further belies Plaintiffs' suggestion that this document could simultaneously be a Claim Notice for the claims they have asserted. The Agreement states any Claim Notice must "specify[] the nature of the Claim and the amount or the estimated amount thereof to the extent then feasible (which estimate shall not be conclusive of the final amount of the Claim)."  *See* ECF # 59, at Exhibit A thereof, at §11.2.3. The Inventory Acknowledgment references an account receivable issue concerning a customer, Columbus Castings, and various inventory issues totaling $153,235.13.  *See* ECF # 59, at Exhibit B thereof.  It does not reference or invoke the indemnification provision of the Agreement, state that Defendants are in breach of any provision of the Agreement, or that Plaintiffs are providing Defendants with notice of any claims pursuant to it.  And in stark contrast to the Inventory Acknowledgment, Plaintiffs have now asserted claims for damages in excess of $1,000,000.00. *See* ECF # 59 at Exhibit C thereof, p. 12 (Interrogatory No. 20).  The vast majority of these alleged damages relate to purported claims concerning an Okuma MacTurn CNC machine, the sale of another Okuma CNC manufacturing machine prior to closing, an accounts receivable issue concerning a different customer (ALCOA), and intellectual property claims (now

5

abandoned).  *See* Complaint, at ¶¶ 18-27.  None of these issues are mentioned anywhere in the Inventory Acknowledgment.

Plaintiffs also attempt to re-cast miscellaneous correspondence as if they are the kind of notice contractually required, even though none of these documents were produced by them in discovery.  Despite Defendants' request that Plaintiffs produce "any and all correspondence or other written documents between or among Plaintiff, Defendants, and/or any other person(s) concerning the allegations in the Complaint," *see* ECF # 59 at <u>Exhibit C</u> thereof, p. 14 (Request for Production No. 6), the only document attached to Plaintiffs' Response Brief that was produced in this case is the Inventory Acknowledgment.

Plaintiffs go so far as to blame Defendants for their own failure to produce relevant, responsive documents, claiming Defendants did not raise this issue until the eve of trial.  *See* ECF # 61, at p. 3.  In the same breath, Plaintiffs claim "it was reasonable for Plaintiffs to assume that these documents were not responsive or at issue in the case" and that Plaintiffs did not need to produce copies of the correspondence because it had "already been sent to [Defendants] once and of which they had equal access to."  *See id.*  These suggestions are risible.  While the documents attached to Plaintiffs' Response Brief in no way constitute a Claim Notice under the Agreement, for Plaintiffs to suggest that correspondence between the parties was not "responsive" to Defendants' discovery request, or "at issue" is simply absurd.  Notice of a claim is not only relevant; the failure to give notice in a contractually agreed time and manner is *dispositive* of Plaintiffs' right to proceed.  Here, those documents must and should have been produced.  If parties were permitted to withhold documents in discovery based upon a unilateral (and unspoken) determination that documents had already been sent or were equally in another party's possession, then the rules governing discovery would serve little purpose.  For these

reasons, Exhibits B through I attached to Plaintiffs' Response Brief should be stricken and not considered by the Court when issuing its ruling. *See Kirby v. AXA Equitable Financial Services, LLC,* S.D.Ohio No. 1:13CV837, 2015 WL 9269446, *3-4 (S.D. Ohio Dec. 21, 2015) (striking documents attached in opposition to a motion never produced in discovery pursuant to Fed.R.Civ.P 37(c)(1) and indicating "[t]he Court will not consider these documents in its ruling on the parties' motions."); *see also* Trial Order (ECF # 44), at p. 3 ("[e]xhibits not listed in the trial brief shall not be introduced at trial, absent a showing of good cause.").[2]

As to Plaintiffs' suggestion that Defendants did not raise this issue, the *first* affirmative defense set forth in Defendants' Answer states that "Plaintiffs' Amended Complaint is barred by Plaintiffs' breach of contract." *See* ECF # 11, at ¶ 38.  Plaintiffs' failures to follow the agreed-upon procedure for the resolution of their purported claims and to comply with the Claim Notice provision are, at bottom, breaches of the Agreement.  On this point, it is critical to note that Plaintiffs failed to propound a single discovery request to Defendants in the entire course of this litigation.  Plaintiffs had every opportunity to conduct discovery on all relevant issues in this case, including the defenses to Plaintiffs' claims, and they failed to do so.  Any perceived lack of fairness or notice of this defense by Plaintiffs is solely a result of their own failure to conduct even the most basic discovery in support of their purported claims.  Furthermore, and in addition to their Answer, Defendants raised the issue in the context of mediation communications, provided to Plaintiffs and the Court in February 2017 in accordance with the Court's Standing Settlement Conference Order (ECF # 30), and in motion practice long before trial.  *See, e.g.,*

---

[2] Even if the Court considers these exhibits, as with the Inventory Acknowledgment, none of them reference or invoke the indemnification provision of the Agreement, purport to be a Claim Notice pursuant to it, or mention all of the claims Plaintiffs now seek to litigate.  This Court should observe that Plaintiffs have asserted claims for damages in excess of $1,000,000.00, the vast majority of which relate to purported claims concerning an Okuma MacTurn CNC machine, the sale of another Okuma CNC manufacturing machine prior to closing, an accounts receivable issue concerning a different customer (ALCOA), and intellectual property claims.  *See* Complaint, at ¶¶ 18-27. None of these issues are mentioned anywhere in the exhibits attached to Plaintiffs' Response Brief.

ECF # 47, at pp. 8-9 (fn 2) (discussing indemnification provision of the Agreement, and Plaintiffs' failure "to follow the agreed-upon procedures for the resolution of their purported claims under the Agreement[.]").  To suggest Defendants never raised the issue until the eve of trial is simply not true.

Finally, Plaintiffs argue "a technical deviation from a contractual notice requirement will not bar the action for breach of contract against a party that had actual notice."  *See* ECF # 61, at p. 4, citing *Stonehenge Land Co. v. Beazer Homes Invests., LLC*, 10th Dist Franklin No. 07AP-449, 07-AP-559, 2008-Ohio-148, 893 N.E. 2nd 855, ¶ 24; *Leisure Sys., Inc. v. Roundup LLC*, S.D. Ohio No. 1:11-cv-384, 2012 WL 5378302 (S.D. Ohio Oct. 31, 2012).   However, Defendants <u>did not</u> have actual notice of Plaintiffs' claims.  As noted above, none of the exhibits attached to Plaintiffs' Response Brief mention anything about purported claims regarding an Okuma MacTurn CNC machine, the sale of another Okuma CNC manufacturing machine prior to closing, an accounts receivable issue concerning ALCOA, or intellectual property claims.  *See* Complaint, at ¶¶ 18-27.[3]   If that set of documents is the best Plaintiffs can muster for notice, it fails, and Plaintiffs should be barred from taking more of the Court's and counsel's time at this juncture.

The cases cited by Plaintiffs in support of this argument are easily distinguishable.  The "technical deficiency" at issue in *Stonehenge* was that notice was improperly sent to an address other than what was provided in the contract, but nonetheless received.  *Stonehenge*, 2008-Ohio-148, 893 N.E. 2nd 855, at ¶ 21.  The *Stonehenge* court noted the defendant had "actual notice of [the plaintiff's] declaration of default and intent to declare a breach, and an opportunity to cure."

---

[3] And while the Inventory Acknowledgment does reference an account receivable issue concerning a customer, Columbus Castings, and various inventory issues totaling $153,235.13, it does not reference or invoke the indemnification provision of the Agreement, state that Defendants are in breach of any provision of the Agreement, or state that Plaintiffs are providing Defendants with notice of any claims pursuant to it.

*Id*.  The same holds true for *Leisure Sys., Inc.,* where notices were again sent to addresses other than those provided in the parties' agreements.  *Leisure Sys., Inc.*, 2012 WL 5378302 at *7-9.  The *Leisure Sys., Inc.* court similarly found that, in spite of the address issue, the notified parties were "actually aware of those default notices and had an opportunity to cure their defaults."  *Id*. at *8.  This is not a case where proper notice was sent to an incorrect address, but nonetheless received.  This is a case where Plaintiffs did not send proper notice of their claims in the first instance, and are now attempting to rely upon the Inventory Acknowledgment – a separate and distinct document required under the Agreement – together with various documents that (1) were not produced in discovery; (2) do not reference or invoke the indemnification provision of the Agreement, or purport to provide notice of any claims in accordance with it; and (3) do not mention any issues regarding the Okuma MacTurn CNC machine, the sale of another Okuma CNC manufacturing machine prior to closing, an accounts receivable issue concerning ALCOA, or intellectual property claims.  Because Plaintiffs cannot demonstrate compliance with the indemnification provision of the Agreement, their claims must fail as a matter of law.

### B.        The Issue of Material Prejudice to Defendants is a Red Herring.

Plaintiffs next argue their claims survive because Defendants cannot identify "material prejudice" arising from the lack of a Claim Notice.  *See* ECF # 61, at p. 4.  Plaintiffs cite no legal authority for this position, and rely solely upon a sentence in the indemnification provision of the Agreement which states "[t]he failure to timely give a Claim Notice shall not relieve Indemnifying Party of its or his obligations hereunder, except and only to the extent that such failure shall result in any material prejudice to Indemnifying Party in defense of the Claim."  *Id*., *see also*, ECF # 59, at <u>Exhibit A</u> thereof, at §11.2.3(a).

Plaintiffs' argument that Defendants have not shown material prejudice is a red herring. By the plain language of the Agreement, the issue of material prejudice to Defendants would only be relevant in the event there was a dispute concerning the *timeliness* of Plaintiffs' delivery of a Claim Notice.  Here, Plaintiffs never provided a Claim Notice in the first instance.  Contrary to Plaintiffs' argument, it is not Defendants' burden to demonstrate material prejudice; it is Plaintiffs' burden to prove compliance with the Claim Notice provision as the party asserting a right of action on the contract.[4]  *See Moraine Materials Co.,* 1998 WL 785363 at *6, citing *Felicity-Franklin Local School Dist. Bd. of Educ.*, 56 Ohio Misc.2d 19, 20-21, 565 N.E.2d 618, 620; *see also Am. Employers Ins. Co. v. Metro Regional Transit Auth.,* 12 F.3d 591, 596 (6th Cir.1993) ("failure to meet the condition [precedent] necessarily precludes recovery **regardless of prejudice**") (emphasis added); *Moraine Materials Co*., 1998 WL 785363 at *8 ("we reject the argument that a lack of prejudice will excuse failure to conform to a notice provision in a contract that is not for insurance.").  Because Plaintiffs have failed to meet their burden on this issue, their claims must fail as a matter of law.

### C.    Defendants Did Not Waive the Claim Notice Issue.

Plaintiffs argue that Defendants waived the Claim Notice issue by failing to raise it by motion at the beginning of the case, or including reference to it in its Answer.  *See* ECF # 61, at p. 5.  However, as noted above, the *first* affirmative defense set forth in Defendants' Answer states that "Plaintiffs' Amended Complaint is barred by Plaintiffs' breach of contract."  *See* ECF

---

[4] Plaintiffs misapprehend the observations in Defendants' Brief concerning material prejudice – they have alleged claims related to highly technical machines, machine parts and inventory, which Plaintiffs have unilaterally determined to be "defective" or "non-conforming," scrapped or replaced without notice to Defendants, and now seek to hold Defendants liable for these decisions, years later.  The prejudice to Defendants is obvious.  Offering Defendants the opportunity to examine whatever items remain in Plaintiffs' possession *now* (years after closing, and after such items were packaged and moved by Plaintiffs from Defendants' former facility in Mentor to Planitiffs' facility in Pennsylvania) does nothing to cure the material prejudice to Defendants' ability to defend against Plaintiffs' allegations that such items were "defective" or "non-conforming" *at the time of closing*.

10

# 11, at ¶ 38.  Plaintiffs' failures to follow the agreed-upon procedure for the resolution of their purported claims and to comply with the Claim Notice provision are, at bottom, breaches of the Agreement.  Again, it is critical to note that Plaintiffs failed to propound a single discovery request to Defendants in the entire course of this litigation.  Plaintiffs had every opportunity to conduct discovery on all relevant issues in this case, including the defenses to Plaintiffs' claims, and failed to do so.  As to whether Defendants were required to file a motion on this issue at the beginning of the case, Plaintiffs point to no authority requiring such an issue to be raised in a Rule 12 motion.[5]  Defendants did not waive this defense.

The case Plaintiffs characterize as being "indistinguishable" from the facts and procedural posture of this case is just the opposite.  In *Picture Me Press, LLC v. CPI Images, LLC*, N.D. Ohio No. 5:08CV32, 2009 WL 2507953 (N.D. Ohio Aug. 11, 2009), the defendant attempted to raise an affirmative defense specifically listed in Fed.R.Civ.P. 8(c)(1), *res judicata*, where that defense was not pled in the defendant's answer.  The defendant argued its inclusion of other defenses, such as the doctrines of waiver and acquiescence, encompassed the defense of *res judicata*.  *Picture Me Press*, 2009 WL 2507953 at *1.  Important to the court's analysis in rejecting this argument was the fact that *res judicata* is one of the nineteen (19) defenses specifically laid out in Fed.R.Civ.P. 8(c):[6]

> The rule lays out nineteen individual affirmative defenses. Waiver, estoppel, and res judicata are separately spelled out by the rule. Accordingly, the plain language of the rule precludes any argument that estoppel and/or waiver are inclusive of res judicata. To reach such a conclusion, the Court would necessarily be required to find that the language of the rule separately delineating res judicata is superfluous.

---

[5] Indeed, only defenses listed in Rule 12(b)(2)-(5) (*i.e.*, lack of personal jurisdiction; improper venue; insufficient process; and insufficient service of process) are waived if not raised in a Rule 12 motion or included in a responsive pleading.  Fed. R. Civ. P. 12(h).

[6] Those defenses are: accord and satisfaction; arbitration and award; assumption of risk; contributory negligence; discharge in bankruptcy; duress; estoppel; failure of consideration; fraud; illegality; injury by fellow servant; laches; license; payment; release; res judicata; statute of frauds; statute of limitations; and waiver.  *Picture Me Press, LLC*, 2009 WL 2507953 at *1, quoting Fed.R.Civ.P. 8(c)(a).

*Id.*  In contrast here, Defendants affirmatively alleged that Plaintiffs' claims were barred by their own breaches of the Agreement, and this defense is not one of the 19 laid out in Fed.R.Civ.P. 8(c).  Also critical to the *Picture Me Press* court's analysis was a fact not present here: the defendant failed to assert the defense in response to the plaintiff's interrogatories:

> In its initial response to interrogatories, CPI asserted: "Plaintiff's claim for damages is barred by laches, acquiescence and waiver due to Plaintiff's failure to enforce its marks against predecessors[.]" Consistent with this Court's view, CPI never indicated that the sales order itself extinguished PMP's claims. Rather, CPI relied upon a lack of prior litigation. CPI is free to raise the fact to the jury that PMP did not participate in the bankruptcy proceedings. From that fact, CPI is free to argue that it has demonstrated acquiescence and waiver. However, argument that the bankruptcy order actually precludes any suit by PMP will not be permitted. To that end, CPI may not argue that the bankruptcy order itself establishes its defenses of acquiescence and/or waiver. As detailed above, that argument was not raised in a timely manner.

*Picture Me Press*, 2009 WL 2507953 at *4.  In stark contrast here, Plaintiffs never issued discovery requests to Defendants.  That being the case, Defendants still raised the issue in the course of the litigation, both in the context of mediation communications, provided to Plaintiffs and the Court in February 2017 in accordance with the Court's Standing Settlement Conference Order (ECF # 30), and in motion practice long before trial.  *See, e.g.,* ECF # 47, at pp. 8-9 (fn 2) (discussing indemnification provision of the Agreement, and Plaintiffs' failure "to follow the agreed-upon procedures for the resolution of their purported claims under the Agreement[.]").  Plaintiffs' citation to *Picture Me Press* is inapposite.

Plaintiffs' analogy to arbitration waivers is similarly misplaced.  *See* ECF # 61, at p. 6. As opposed to the situation where a party voluntarily waives a contractual right to arbitration by litigating, Plaintiffs' own performance under the Agreement and damages are elements for which they bear the burden of proof.  *Nachar v. PNC Bank, Nat. Ass'n*, 901 F.Supp.2d 1012, 1018 (N.D.Ohio 2012) (Boyko, J.), citing *Baghani v. Charter One Bank F.S.*B., No. 91373, 2009 WL

280399, ¶ 13 (Ohio Ct. App. Feb. 5, 2009).  As set forth in Defendants' Brief, "[i]t is well established under Ohio Contract Law that a party must comply with all express conditions to be performed in case of breach before it can claim damages by reason of the breach."  *Au Rustproofing Ctr., Inc.*, 755 F.2d at 1237, citing *Bell Bros.*, 28 Ohio C.D. at 164; *see also Tattletale Portable Alarm Systems, Inc.*, 2016 WL 5122545 at *4.  Because Plaintiffs cannot demonstrate compliance with the indemnification provision of the Agreement, they cannot claim damages by reason of any alleged breach.  It necessarily follows, therefore, that Plaintiffs cannot meet the required elements to prove their breach of contract claims.  As such, those claims must fail as a matter of law.

### D. The Court Need Not Decide the Inventory Acknowledgment Issue to Dispose of Plaintiffs' Claims.

Plaintiffs' final argument, which cites no legal authority, is that issues such as Plaintiffs' late delivery of the Inventory Acknowledgment and Defendants' corresponding inability to prepare a Closing Statement cannot be resolved on the factual record before the Court, because Plaintiffs intend to offer testimony or argument that Defendants have unclean hands, or other contractual defenses.  *See* ECF # 61, at p. 6.  In this regard, Plaintiffs argue that Defendants have waived arguments concerning the timeliness of the Inventory Acknowledgment because they were not properly raised,[7] and again cite documents never produced in discovery,[8] which should not be considered.  *See Kirby*, 2015 WL 9269446 at *3-4 (striking documents attached in opposition to a motion never produced in discovery pursuant to Fed.R.Civ.P 37(c)(1) and indicating "[t]he Court will not consider these documents in its ruling on the parties' motions.");

---

[7] They were.  *See* ECF # 11, at ¶ 38 ("Plaintiffs' Amended Complaint is barred by Plaintiffs' breach of contract."); *see also id*., at ¶ 45 ("Plaintiffs' Amended Complaint fails because Plaintiffs failed to diligently and properly conduct an inventory in a timely manner.")

[8] Neither of these exhibits indicates, as Plaintiffs suggest, that Defendants agreed to waive or modify any deadline provided in the Agreement.

*see also* Trial Order (ECF # 44), at p. 3 ("[e]xhibits not listed in the trial brief shall not be introduced at trial, absent a showing of good cause.").

However, determination of these issues is unnecessary, as Plaintiffs' claims fail, even assuming the truth of Plaintiffs' arguments.  Because Plaintiffs cannot demonstrate compliance with the indemnification provision of the Agreement, they cannot claim damages by reason of any alleged breach.  *Au Rustproofing Ctr., Inc.*, 755 F.2d at 1237, citing *Bell Bros.*, 28 Ohio C.D. at 164; *see also Tattletale Portable Alarm Systems, Inc.*, 2016 WL 5122545 at *4 (same). Regardless of any other issue, because Plaintiffs have not and cannot meet their burden *on this issue*, their claims must fail as a matter of law.

## **<u>CONCLUSION</u>**

Plaintiffs failed to provide notice of their purported claims in accordance with the indemnification provision of the Agreement, and have specifically waived their right to pursue claims or causes of action for "breach of any representation, warranty . . . or otherwise relating to the subject matter of [the] Agreement."  Accordingly, the Court should find that Plaintiffs' claims fail as a matter of law.

Respectfully submitted,

/s/ Tim L. Collins
Thomas J. Scanlon (0017308)
tscanlon@collins-scanlon.com
Tim L. Collins (0033116)
tcollins@collins-scanlon.com
Joseph H. Gutkoski (0086285)
jgutkoski@collins-scanlon.com
COLLINS & SCANLON LLP
3300 Terminal Tower
50 Public Square
Cleveland, Ohio 44113-2289
Telephone: 216-696-0022
Facsimile: 216-696-1166

and

Mark A. DiCello (0063924)
madicello@dlcfirm.com
DICELLO LEVITT & CASEY, LLC
7556 Mentor Avenue
Mentor, Ohio 44060
Telephone: 440-953-8888
Facsimile: 440-953-9138

*Counsel for Defendants Air Tool Service
Company, n/k/a X5432, Inc. and Rick J.
Sabath*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1ST day of September, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties not receiving service through the Court's electronic filing system will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

Brian P. Muething
bmuething@kmklaw.com
Jacob D. Rhode
jrhode@kmklaw.com
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202

*Counsel for Plaintiffs*
*ATSCO Holdings Corp. and*
*Hy-Tech Machine, Inc.*

/s/ Tim L. Collins
*One of the Attorneys for Defendants Air*
*Tool Service Company, n/k/a X5432, Inc.*
*and Rick J. Sabath*

*P:\Melinda\Sabath, Rick J\ATSCO Suit\Motions & Pleadings\(2017-09-01) Reply Brief re Indemnification Provision.docx*