**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ATSCO HOLDINGS CORP. ET AL., | ) | CASE NO.1:15CV1586 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| AIR TOOL SERVICE CO. ET AL., | ) | <u>ORDER</u> |
| | ) | |
| Defendant. | ) | |

**<u>CHRISTOPHER A. BOYKO, J</u>:**

This matter is before the Court to determine whether Plaintiffs' claims are subject to the indemnification claim procedure as contained in the Asset Purchase Agreement ("APA").

On July 20, 2017, the Court held a Final Pre-trial in the above-captioned case. At the Final Pre-trial, Defendants argued Plaintiffs failed to provide timely notice of claims under the express terms of the APA. Plaintiffs acknowledged that the notice was not submitted within the time frame agreed to by the parties in the APA. According to Defendants, this failure to timely submit a notice of a claim was a condition precedent to filing an action in court and precludes Plaintiffs from asserting such claims in the above-captioned case. Plaintiffs requested an opportunity to brief the issue. On July 21, 2017, the Court issued an order continuing the bench trial set for July 31, 2017, and instead, ordered the parties to brief the notice issue. Those briefs have been submitted and the matter is ripe for ruling.

**Background Facts**

According to Plaintiffs' Amended Complaint, Plaintiffs ATSCO Holdings Corp. and Hy-Tech Machine, Inc. are Delaware corporations with principal places of business in Pennsylvania. Defendant Air Tool Service Co. is an Ohio corporation and Defendant Rick Sabath, Air Tool Service Co.'s sole shareholder, is a North Carolina resident. The case is here under the Court's diversity jurisdiction.

The claims in this case arise out of an Asset Purchase Agreement executed on August 13, 2014, wherein Plaintiffs purchased nearly all the assets of Defendant Air Tool for $7,658,540. The purchase price was to be adjusted pursuant to a closing statement and working capital adjustment. According to Plaintiffs, Defendants have refused to satisfy the working capital adjustment of $100,928. Pursuant to the agreement, $387,500 has been placed in escrow in connection with the capital adjustments and to deal with certain disputes.

According to Plaintiffs, Defendants made several representations and warranties including: 1) the financial statements were true and accurate; 2) that there were no debts or liabilities outside those reflected in the balance sheet or financial statements; 3) they were the owners of all the Intellectual Property used in its business operations; 4) its inventories were finished and saleable; and 5) it owned the assets listed in the agreement and these assets were well maintained and in good working condition. After closing, Plaintiffs learned that these representations and warranties were untrue.

Plaintiffs allege that certain grinders and grinder part inventories intended for a customer, ATA, were non-saleable. These were valued at $93,313. Two tools manufactured for Michigan Pneumatic were non-saleable. These were valued in the agreement at $13,000. Parts

2

manufactured for a company, TorcUp, were defective. These were valued at $8,000. Other parts and assemblies valued in the agreement at $90,000, were unusable or unrepairable.

Equipment sold to Plaintiffs also were in poor condition, causing loss to Plaintiffs. These include a computerized numerical controlled manufacturing machine, the Okuma MacTurn, that stopped manufacturing shortly after closing, costing Plaintiffs $32,714.36 to repair and will require an additional $45,000 in parts and $30,000 in labor charges to make the machine operational. Due to the machine's break down, Plaintiffs have lost $100,000 in productivity. Without a sufficient replacement, Plaintiffs cannot continue the manufacturing business costing them an additional $130,000. In addition, Defendants kept payments rightfully belonging to Plaintiffs in the amount of $2,715.42.

Despite Defendants' representations, third parties have disputed the ownership of certain intellectual property sold by Defendants to Plaintiffs. There is also $20,000 in liabilities owed to third parties that Defendants did not disclose in the balance sheet.

As a result, Plaintiffs allege Breach of Contract and Unjust Enrichment claims against Defendants.

Defendants counterclaim for the escrowed amount of $387,500, contending they made no false representations. According to Defendants, Plaintiffs had ample opportunity prior to closing to inspect all inventory, equipment, balance sheets and Accounts but failed to do so. Defendants further allege Plaintiffs failed to take adequate steps to protect the assets and inventory post-closing. Defendants allege they complied with all contractual requirements, yet Plaintiffs have breached the agreement by failing to release the escrowed funds.

## The Indemnification Clause

According to Defendants, Plaintiffs' claims for Breach of Contract and Unjust Enrichment are subject to the Indemnification provision of the APA. The Indemnification clause required Plaintiffs to provide notice per the terms of the APA prior to filing suit on any claims arising therefrom. Defendants contend the claim notice is a condition precedent to the filing of any claim. Furthermore, the parties agreed the Indemnification procedure would be the exclusive remedy for any claims arising from the APA. Therefore, according to Defendants, all Plaintiffs' claims must be dismissed.

According to Plaintiffs, they complied with the notice procedure as evidenced by Plaintiffs' timely emails to Defendants notifying them of issues that are the subject of this suit. Plaintiffs further allege Defendants waived any rights to the claim procedure by failing to assert their waiver defense until the eve of trial.

According to the terms of the APA, both Plaintiffs and Defendants agreed to indemnify each other for any claims arising out of the APA whether brought by each other or by third parties against the parties. Section 11.2.1 established the indemnification requirements and reads in pertinent part:

**11.2.1 General Indemnification Obligation of Seller and Shareholder.**

> From and after the date hereof, Seller and Shareholder, jointly and severally, will reimburse, indemnify and hold harmless Purchaser and its directors, officers, employees, shareholders, successors and assigns (an "Indemnified Purchaser Party") against and in respect of any and all Actions, damages, losses, diminution in value, deficiencies, liabilities, assessments, fines, costs and expenses, including court costs, costs and expenses of investigation and reasonable attorneys fees (collectively, "Losses"), incurred or suffered by any Indemnified Purchaser Party that result from, relate to or arise out of:(b) any misrepresentation or breach of warranty on the part of Seller and/or Shareholder under this Agreement; ( c) nonfulfillment of any agreement or covenant on the part of Seller and/or

Shareholder under this Agreement.

Section 11.2.3 of the APA outlines the procedure to submitting a claim notice and reads as follows:

> In the event that any Action, Claim or demand (collectively, "Claim") for which a party hereto has an obligation to provide indemnification (the "Indemnifying Party")would be liable to another party hereunder (the "Indemnified Party") is asserted against or sought to be collected from an Indemnified Party by a third party, the Indemnified Party shall notify the Indemnifying Party of such Claim, specifying the nature of the Claim and the amount or the estimated amount thereof to the extent then feasible (which estimate shall not be conclusive of the final amount of the Claim) (the "Claim Notice"). The Indemnifying Party shall thereupon, at its sole cost and expense, assume the control of the defense, settlement or compromise of the Claim against the Indemnified Party with counsel of Indemnifying Party's choosing that is reasonably satisfactory to Indemnified Party. The failure to timely give a Claim Notice shall not relieve Indemnifying Party of its or his obligations hereunder, except and only to the extent that such failure shall result in any material prejudice to Indemnifying Party in defense of the Claim.
>
> ( c) In the event an Indemnified Party should have a Claim against Seller and/or Shareholder hereunder that does not involve a Claim being asserted against or sought to be collected from it by a third party, the Indemnified Party shall send a Claim Notice with respect to such Claim to Seller and/or Shareholder.

Section 13.6 describes how notice of a claim must be delivered:

> Any and all notices or other communications or deliveries required or permitted to be given or made pursuant to any of the provisions of this Agreement shall be deemed to have been duly given or made for all purposes when hand delivered or sent by certified or registered mail, return receipt requested and postage prepaid, overnight mail or courier, or telecopier.

Section 11.5 describes that the Indemnification clause is the parties' agreed upon sole and exclusive remedy:

> ( c) The parties acknowledge and agree that their sole and exclusive remedy with respect to any and all Claims (other than Claims arising from fraud, criminal activity or willful misconduct on the part of a party hereto in connection with the transactions contemplated by this Agreement) for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or

5

> otherwise relating to the subject matter of this Agreement, shall be pursuant to the indemnification provisions set forth in this Article XI. In furtherance of the foregoing, each party hereby waives, to the fullest extent permitted under Law, any and all rights, Claims and causes of Action for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement it may have against the other parties hereto and their Affiliates and each of their respective Representatives arising under or based upon any Law, except pursuant to the indemnification provisions set forth in this Article XI.

**<u>Timely Submission of Claim Notice</u>**

The first issue is whether Plaintiffs submitted to Defendants a timely Claim Notice. Plaintiffs submit a letter they sent to Defendants dated October 16, 2014 via email. That letter describes claims as to the value of certain inventory and accounts receivable. It is the only document offered by Plaintiffs evidencing a claim. According to the APA, the representations and warranties contained in it survive the Closing date of August 13, 2014 for one year with certain exceptions for taxes owed, litigation by third parties, Seller's accounts, OSHA and Environmental claims, and claims arising from an Employee benefit plan or COBRA.

Pursuant to Section 11.5(c), the parties agreed this indemnification process is the sole and exclusive remedy to any and all claims regarding breach of warranties and representations and must be brought in accordance with the Claim notice requirements. Thus, any claims brought by Plaintiffs regarding any alleged breach of warranties or representations that were not alleged in the October 16, 2014 letter are outside the agreed upon survival period. Even if the Court were to consider the filing of the Complaint in this action as a Claim notice, service was not attempted on Defendants until August 17, 2015, outside the one year contractual survival period.

While Defendants are correct that a Claim notice must be submitted, the Court finds the October 16, 2014 letter, while purportedly brought in regards to the inventory provision of

Section 2.3, was sufficient to place Defendants on notice of a claim. Section 11's claim notice provision only requires that a Claim notify the Defendanta of the claim, specify the nature of the claim and the amount or an estimate of the amount. The October 16th letter complies with these requirements. Furthermore, under the APA, notice of a Claim shall be "hand delivered or sent by certified or registered mail, return receipt requested and postage prepaid, overnight mail or courier, or telecopier." Here, the October 16, 2014 letter appears to have been delivered by email. While not strictly compliant with the APA, this method of delivery provided actual notice of a claim that the Court finds sufficient under the law. "The long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract. Merely nominal, trifling, or technical departures are not sufficient to breach the contract." *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.,* (2008) 2008-Ohio-148, ¶ 24, 177 Ohio App. 3d 7, 18–19, 893 N.E.2d 855, 863 quoting *Ohio Farmers' Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, paragraph two of the syllabus. "A court should confine the application of the doctrine of substantial performance to cases where the party has made an honest or good faith effort to perform the terms of the contract." *Burlington Resources Oil & Gas Co. v. Cox* (1999), 133 Ohio App.3d 543, 548, 729 N.E.2d 398, citing *Ashley v. Henahan* (1897), 56 Ohio St. 559, 47 N.E. 573, paragraph one of the syllabus. "For the doctrine of substantial performance to apply, the part unperformed must not destroy the value or purpose of the contract." *Hansel v. Creative Concrete & Masonry Constr. Co.,* 148 Ohio App.3d 53, 2002-Ohio-198, 772 N.E.2d 138, at ¶ 12. Here, notice of a claim by email did not destroy the purpose of the contract and constitutes substantial performance in that it provided actual notice of a claim to Defendant. *See also Roger J. Au & Son, Inc. v. Northeast Ohio Regional Sewer Dist.* (1986),

29 Ohio App.3d 284, 292, 29 OBR 349, 504 N.E.2d 1209 ( "[t]here is no reason to deny the claims for lack of written notice [if a party] was aware of [a disputed fact] and had a proper opportunity to investigate and act on its knowledge, as the purpose of the formal notice would thereby have been fulfilled"). In fact, this Court is hardpressed to find any meaningful difference between delivery of a claim notice by fax versus email such that it would warrant dismissal of Plaintiff's claims. Therefore, the Court finds Plaintiffs did submit a timely claim notice to Defendants.

**Sole and Exclusive Remedy**

Defendants correctly state that the parties waived any and all rights, claims and causes of action for breach of representation, warranty, covenant, agreement or obligation arising out of the APA and the parties conceded that the indemnification clauses were the sole and exclusive remedy under the APA. However, the indemnification clauses do not describe how a dispute over a claim is determined, or by whom. The APA at Section 13.7 clearly contemplates legal action in some form or another as it expressly states that disputes are to be determined under Ohio law and that courts in Ohio have exclusive jurisdiction over any action. In the absence of any designation of how a claim is determined, the Court finds the indemnification clause does not deprive the Court of the authority to determine this dispute.

**Waiver**

Plaintiffs allege Defendants are unable to assert the indemnification defenses at this point in the litigation because they did not raise the issue in this litigation until the eve of trial. Here, the parties' APA contemplates compliance with the Indemnification clause's claim procedure requiring that notice of Claim be brought within the survival period. It further contemplates that

the Claim procedure is the sole and exclusive remedy for disputes arising out of the agreement. However, unlike an arbitration clause wherein the parties agree that disputes be resolved by an outside arbiter, the APA's Indemnification clause does not describe who is to make the determination on the dispute.  When coupled with the choice of law and jurisdiction clause that expressly requires any action be determined under Ohio law under the jurisdiction of federal court in the Northern District of Ohio or certain Ohio state courts, the Court finds no waiver of this Court's jurisdiction to determine the dispute.  Nor does the Court find Defendants waived the right to assert the defense of failure to comply with indemnification clause.  Defendants' Amended Answer lists the affirmative defenses of breach of contract, estoppel and failure to comply with the terms of the inventory procedure.  Defendants raised this issue more than one month prior to trial and the Court continued the trial to allow the parties to brief the issue such that no prejudice to Plaintiff has occurred.  Therefore, the Court finds Defendants have not waived their arguments on the applicability of the Indemnification clause.

Lastly, the Defendants contend Plaintiff's claims arising from Section 2.3.2.1 must be dismissed for Plaintiff's failure to comply with time requirements of that Section.

Under Section. 2.3.2.1 of the APA, Plaitniffs were to conduct an Inventory Coun and submit a roll-back of the Inventory Count to Defendants and after receipt of a Closing Statement, submit to Defendants within thirty days thereafter any disputes.  Section 2.3.2.1 reads as follows:

> Not later than twenty (20) days after the Closing Date, a physical count of the Inventory (the "Inventory Count") will be taken by Michael Sivula, Nicholas Russell and Michael Turick, or if for any reason any of such persons does not take such Inventory Count, such other persons as may be reasonably acceptable to Purchaser and Seller (such acceptance, if any, to be evidenced by written agreement between Purchaser and Seller), in accordance with past practices of Seller and other reasonable procedures of Purchaser, as of the date of such Inventory Count.  Purchaser shall give Seller reasonable advance notice of the Inventory Count and allow Shareholder to be physically present

during such count.  Not later than twenty (20) days after the Closing Date, a roll-back (the "Roll-Back") of the Inventory Count (the "Roll-Back Inventory") to the Effective Time will be performed by employees of Purchaser.  The Roll-Back will be performed in a manner consistent with the method utilized in preparing the Audited Financial Statements.  A statement setting forth the Roll-Back Inventory based upon such Roll-Back (the "Inventory Acknowledgment"), will be delivered by Purchaser to Seller not later than twenty (20) days after the Closing Date.  The Roll-Back Inventory, as set forth in the Inventory Acknowledgement is hereby deemed final, conclusive and binding, absent manifest error.

Section 2.3.3 set forth a procedure to resolve such disputes by means of an agreed upon independent auditor.  If the parties could not agree on an independent auditor, they would submit the appointment decision to arbitration.  Defendants refused to arbitrate the issue when Plaintiffs submitted the matter to arbitration.

The Court holds that claims arising out of Section 2.3.2.1 were subject to an arbitration agreement procedure that Defendants refused to participate in.   Plaintiffs never moved the Court for an order to compel arbitration.  Therefore, the Court deems this arbitration issue waived and pursuant to the Indemnification clause those claims are properly before this Court and will be adjudicated at trial.

Therefore, for the foregoing reasons, the Court finds Plaintiffs' claims are limited to those claims made in the October 16, 2014 letter.   Any claims, whether by Plaintiffs or Defendants that were subject to the Claim notice requirements under the APA, will be foreclosed at trial.

In light of the above determination, the parties are ordered to confer and submit to the Court no later than January 5, 2018  proposed, agreed upon dates for a final pretrial and trial.  Furthermore, if the parties believe that, in light of this opinion a settlement conference may be productive, they shall also include in their submission proposed dates for a settlement conference.

...

IT IS SO ORDERED.

                                                s/ Christopher A. Boyko
                                                CHRISTOPHER A. BOYKO
                                                United States District Judge

Dated: December 20, 2017