UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ATSCO HOLDINGS CORP., *et al.* ) | CASE NO. 1:15-CV-1586 |
| ) | |
| *Plaintiffs*, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| v. ) | |
| ) | |
| AIR TOOL SERVICE COMPANY, *et al.* ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

## PLAINTIFFS' TRIAL BRIEF

Plaintiffs ATSCO Holdings Corp. and Hy-Tech Machine, Inc., collectively, the "Plaintiffs," hereby submit their trial brief.

1. <u>Background</u>

Plaintiffs are companies with their principal places of business in Pennsylvania. They are affiliates of P & F Industries, a publicly traded company headquartered in Huntington, New York. Plaintiffs and P & F are leading manufacturer and importer of air-powered tools sold principally to the industrial, retail and automotive markets. Defendants are Air Tool Service Company (the "Seller") and Rick J. Sabath. Mr. Sabath is or was the owner of Defendant Air Tool Service Co. They are together the "Defendants."

On August 13, 2014, Plaintiffs and Defendants executed an asset purchase agreement (the "Agreement"). By the Agreement, Defendants sold substantially all the assets of the Seller. Plaintiffs paid $7,658,540, subject to certain adjustments, for the assets of the business. Approximately $7.2 million of this purchase price has already been paid, in cash, to Defendants. An additional $387,500 was placed in and continues to be held in escrow.

1

The purchase agreement was not an as-is sale. To the contrary, the Agreement, in Section 3, contains 38 separate representations and warranties, covering 17 pages of the Agreement, that Defendants made to Plaintiffs. Each of the representations and warranties "shall be deemed material" and Plaintiffs stated that they specifically "relied upon the correctness and completeness of each of such representations and warranties" in "consummating th[e] Agreement." Agreement at 15.

Representations and warranties like those contained in the Agreement are a crucial part of acquisitions. It has been said by one court that, "Due diligence is expensive and parties to contracts in the mergers and acquisitions arena often negotiate for contractual representations that minimize a buyer's need to verify every minute aspect of a seller's business. In other words, representations like the ones made in the Asset Purchase Agreement serve an important risk allocation function." *Cobalt Operating, LLC v. James Crystal Enters.*, 2007 Del. Ch. LEXIS 108, *89, 2007 WL 2142926 (Del. Ch. July 20, 2007).[1] "By obtaining the representations [they] did," Plaintiffs placed the risk [with respect to matters in the representations] on [Defendants.]" *Id*.

These representations and warranties have a substantial effect on the due diligence that a buyer undertakes in advance of a transaction. Without a strong set of representations and warranties, a would-be purchaser would undertake exhaustive diligence, literally and figuratively turning over every stone to examine the assets being purchased. But with a strong set of representations and warranties, a buyer's "need then, as a practical business matter, to independently verify those things was lessened because it had the assurance of legal recourse against [the seller] in the event the representations turned out to be false." Id.

---

[1] It has been recognized that Delaware courts have become specialists in the field of corporate law, and decisions of the Delaware courts are often "instructive" on corporate matters. *McCarthy v. Middle Tenn. Elec. Mbrshp. Corp.*, 466 F.3d 399, 409 (6th Cir. 2006).

Among the 38 representations and warranties are several that are directly relevant to the claims asserted by Plaintiffs in this matter are:

- in section 3.6 of the Agreement, Defendants represented and warranted that the financial statements provided to Plaintiffs were, among other things, true and complete and fairly presented the financial position of Defendants;

- in section 3.7 of the Agreement, Defendants represented and warranted that there were no debts or liabilities not reflected on the balance sheet or financial statement;

- in section 3.13 of the Agreement, Defendants represented and warranted that the inventories purchased in the transaction were finished and saleable in the ordinary course of business;

- in section 3.17 of the Agreement, Defendants represented and warranted that it owned all of the assets reflected on the balance sheet and that all of these were in good operating condition and well maintained. Section 3.17 also contains a representation that the assets being sold "constitute all assets necessary to permit Seller to conduct the Business as now conducted."

Notably, these representations did not lose any of their force simply because Plaintiffs conducted certain due diligence before the transaction. Instead, pursuant to section 11.7 of the Agreement, "the representations, warranties, covenants and agreements of Seller and Shareholder, and the Purchaser's right to indemnification with respect thereto, shall not be affected or deemed waived by reason of any investigation made by or on behalf of the Purchaser."

As described below on a claim-by-claim basis, certain of the Defendants' representations and warranties turned out to be false. By this lawsuit, Plaintiffs seek compensation for those breached representations that give rise to a claim for breach of contract.

Plaintiffs do not seek to undo the sale. Plaintiffs have not sued for fraud. The damages claims asserted here represent a small portion of the purchase price. Plaintiffs seek only fair compensation for the bargained-for rights reflected in the Agreement.

Plaintiffs below identify specific aspects of their claim.

2. Factual Issues Regarding Claims

<u>Claim 5 – A/R mispayment</u>

ALCOA paid $1,109.50 pursuant to invoice number 270377821 to Defendants when, pursuant to the agreement, that money should have been paid to Plaintiffs. Jim Aloi will testify regarding this issue

<u>Claim 6 – Working Capital Adjustment</u>

Pursuant to the Agreement, Plaintiffs are entitled to a working capital adjustment. The payment is simply the product of a formula as provided in the Agreement. Defendants have previously acknowledged Plaintiffs entitlement to such a payment but have failed to make the required payment. The amount owed to Plaintiffs pursuant to the working capital adjustment is $100,928. This claim is supported by Exhibits PX-1-5, PX-13, PX-22-25. Joe Molino, Patrick Crotty, Jim Aloi, and Robert Ober will testify concerning these issues, with Mr. Molino focusing on the transaction and purpose of the working capital adjustments, Mr. Crotty and Mr. Ober focusing on operational issues and challenges underlying the working capital adjustment, and Mr. Aloi testifying on all relevant issues.

<u>Claim 7 – Macturn Inefficiency, and work performed elsewhere</u>

Pursuant to Section 3.17 of the Agreement, Defendants represented that the purchased assets were of sufficient quantity and quality to run the business as Defendants had prior to the sale. This representation was false. Upon closing, Plaintiffs discovered that the sale of one Macturn machine and the poor performance of the other prevented Plaintiffs from operating the business as represented by Defendants. To address this deficiency, Plaintiffs were forced to undertake work that should have been performed by a Macturn machine at different locations of the business. This caused Plaintiffs substantial damages. The projects that became necessary because of this issue, the work performed, and the cost associated with that work is described. Patrick Crotty, Jim Aloi, and Robert Ober will testify concerning these issues. Each of Mr. Crotty, Aloi, and Ober have knowledge of and will testify to the inefficiencies and challenges presented by the poorly performing Macturn machines and the operational decisions and need to perform work elsewhere.

Claim 8 – Macturn Maintenance

Pursuant to Section 3.17 of the Agreement, Defendants represented that the purchased assets were of sufficient quantity and quality to run the business as Defendants had prior to the sale. This representation was false. Upon closing, Plaintiffs discovered that the sale of one Macturn machine and the poor performance of the other prevented Plaintiffs from operating the business as represented by Defendants. To address this deficiency, Plaintiffs were forced to expend substantial out of pocket costs, totaling $151,428.74, repairing the one remaining Macturn machine. Patrick Crotty, Jim Aloi, and Robert Ober will testify concerning these issues. Each of Mr. Crotty, Aloi, and Ober have knowledge of and will testify to the inefficiencies and challenges presented by the poorly performing Macturn machines and the operational decisions

and need to expend costs maintaining and fixing the machine. PX-14 is the principal exhibit relating to this claim.

Claim 9 – Macturn Replacement

Pursuant to Section 3.17 of the Agreement, Defendants represented that the purchased assets were of sufficient quantity and quality to run the business as Defendants had prior to the sale. This representation was false. Plaintiffs were forced to purchase a new machine and incur related expenses. This would not have been necessary but for the sale of one machine before the closing and the inadequate performance of the other machine. The cost of this was $370,757.65. Patrick Crotty, Jim Aloi, and Robert Ober will testify concerning these issues. Each of Mr. Crotty, Aloi, and Ober have knowledge of and will testify to the inefficiencies and challenges presented by the poorly performing Macturn machines and the operational decisions and need to acquire a replacement. See also PX-15.

Claim 10 – Inaccurate Drawings and Plans

Pursuant to Section 3.17 of the Agreement, Defendants represented that the purchased assets were of sufficient quantity and quality to run the business as Defendants had prior to the sale. This representation was false. Upon closing, Plaintiffs discovered that many of the purchased plans and drawings were inaccurate, incomplete, or otherwise could not be utilized by Plaintiffs in operation of the business. Plaintiffs have identified approximately 185 changes, the part in question, the nature of the change, and the cost associated with same. Patrick Crotty, Jim Aloi, and Robert Ober will testify concerning these issues. See PX-26. Damages for this issue total $127,250.

3. Contested Legal Issues

There are limited contested legal issues in this matter. Plaintiffs bring a breach of contract and unjust enrichment claim, though they principally rely on their breach of contract claim. The elements of the breach of contract claim are well-settled. Plaintiffs must prove (1) the existence of a contract; (2) the performance under the contract; (3) breach by a defendant; and (4) damages he sustained. See *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, 878 N.E.2d 66, ¶18. There is no dispute that there exists a contract and Plaintiffs performed their aspect of the contract by paying the purchase price. Whether or not there has been a breach is a factual question.

With respect to damages, "An award of damages must be shown with a reasonable degree of certainty and in some manner other than mere speculation, conjecture, or surmise." *See Raze Int'l, Inc. v. Southeastern Equip. Co.*, 2016-Ohio-5700, ¶¶64-65, 69 N.E.3d 1274, at 1289-1290, (Ohio Ct. App. 2016) (citing *Elias v. Gammel*, 8th Dist. No. 83365, 2004-Ohio-3464, at ¶ 25). Damages are not speculative when they can be "computed to a fair degree of probability." *Id.* (citing *Allied Erecting & Dismantling Co., Inc. v. Youngstown*, 151 Ohio App.3d 16, 2002-Ohio-5179, 783 N.E.2d 523, ¶ 65 (7th Dist.)).

Once a right to damages has been established, the right will not be denied simply because the damages are inconceivable of being calculated with mathematical certainty. *Baird v. Crop Prod. Servs.*, 2012-Ohio-4022, ¶¶48-49, 2012 Ohio App. LEXIS 3522, *25-26 (Ohio Ct. App. Sept. 4, 2012) (citing *Pennant Moldings, Inc. v. C & J Trucking Co.*, 11 Ohio App.3d 248, 252, 11 Ohio B. 374, 464 N.E.2d 175 (12th Dist.1983)).

3. <u>Witness Identification</u>

Plaintiffs intend to call Joseph Molino, Patrick Crotty, Jim Aloi, and Robert Ober. The subject of their testimony is generally identified above. Plaintiffs also reserve the right to call any person necessary to authenticate documents and/or records custodians of any party. Plaintiffs may also call any witness identified by Defendants or rebuttal witnesses as necessary.

4. Exhibit Identification

## EXHIBIT INDEX

| FILE NAME | EXHIBIT |
|---|---|
| ATSCO Inventory Roll Back for 08-14-14 after Re-count on after Re-count on 09-22-1409-22-14 | PX-1 |
| Acquisition Opening BS Workups | PX-2 |
| ATSCO Finished GDS and Raw Material Adjusted Balance for Opening Balance as of 08-14-14 | PX-3 |
| ATSCO Finished Goods Valuation as of 08-18-14 | PX-4 |
| ATSCO Raw Material Inventory Valuation as of 08-18-14 | PX-5 |
| ATSCO Item No 5 – Rework Labor to Repair Parts for Period 09-01-14 through 01-31-15 | PX-6 |
| ATSCO Legal Item No 3 and 4 – List of Poor Quality Parts with Explanation | PX-7 |
| ATSCO's D.C.O.'s Since Acquisition | PX-8 |
| ATSCO's Closing Assets with Adjustments as of 10-13-14 | PX-9 |
| ATSCO Physical Inventory Quantity and Value Variance Report as of 09-05-14 | PX-10 |
| ATSCO Legal Item No 5 – Parts Written Off Due to Quality Issues | PX-11 |
| HY-TECH Machine Inc. Machine Use Report 09-01-14 through 12-28-16 | PX-12 |
| Final New Working Capital Balance | PX-13 |
| HY0001-HY0113 | PX-14 |
| HY0114-HY0136 | PX-15 |
| Asset Purchase Agreement | PX-16 |
| HY0176-HY0475 (due diligence binders) | PX-17 |
| HY0476-HY0695 (due diligence binders) | PX-18 |
| HY0696-HY0989 (due diligence binders) | PX-19 |
| HY0990-HY1733 (due diligence binders) | PX-20 |
| HY1734-HY2034 (due diligence binders) | PX-21 |
| ATSCO Inventory Acknowledgement | PX-22 |
| ATSCO Roll Back Inventory for 08-14-14 After Re-count on 09-22-14 | PX-23 |
| ATSCO WIP Values – Beginning Balance – Pre Physcial and Current, 2014 | PX-24 |
| Bank Activity from 08-13-14 to 09-29-14 | PX-25 |
| ATSCO DCOS 2-9-16 | PX-26 |
| 081414 ATSCO v.20 Adjusted GLTB Walk Across | PX-27 |
| v.11 recount 092214 2014 sep 5 v.7 atsco physical unv by tag var and bin | PX-28 |
| ATSCO Legal Item No 5 – 110114-033115 ATSCO QUALITY ISSUES ANALYSIS | PX-29 |

| | |
|---|---|
| Copy of hy-tech mach 143 | PX-30 |
| Other documents produced by the parties | |
| Pleadings and discovery responses | |
| Those exhibits identified by Defendants | |
| Rebuttal exhibits | |

## 5) Evidentiary Issues

Defendants seem intent on attempting to reclassify the testimony of Plaintiffs' employees, testifying as fact witnesses to those matters that they are aware of as a matter of fact, as expert testimony. This is improper. Their testimony is of those matters they are personally aware of, not opinion testimony, and in this regard their testimony is factual in nature.

## 6) Length of Trial

Plaintiffs believe a bench trial of this matter will take three days.

**Proposed Findings of Fact and Conclusions of Law**

**Findings of Fact**

1. Plaintiff ATSCO is a Delaware corporation with its principal place of business in Pennsylvania.

2. Plaintiff Hy-Tech is a Delaware corporation with its principal place of business in Pennsylvania.

3. Defendant Air Tool Service Company (now known as X5432, Inc. ("Air Tool Service Co.")) is an Ohio corporation with its principal place of business in Ohio. Air Tool Service Co. was the operator of a business involved in designing, engineering, and manufacturing pneumatic motors and tools for certain applications.

4. Defendant Rick J. Sabath ("Sabath") is, upon information and belief, a citizen of North Carolina. Sabath was and, upon information and belief, is the sole shareholder of Air Tool Service Co. Air Tool Service Co.

5. On August 13, 2014, Plaintiffs and Defendants executed an asset purchase agreement (the "Agreement"). By the Agreement, Defendants sold substantially all the assets of the Seller. Plaintiffs paid $7,658,540, subject to certain adjustments, for the assets of the business. Approximately $7.2 million of this purchase price has already been paid, in cash, to Defendants. An additional $387,500 was placed in and continues to be held in escrow.

6. The Agreement, in Section 3, contains 38 separate representations and warranties, covering 17 pages of the Agreement, that Defendants made to Plaintiffs.

7. The Agreement states that each of the representations and warranties "shall be deemed material" and Plaintiffs stated that they specifically "relied upon the correctness and

completeness of each of such representations and warranties" in "consummating th[e] Agreement." Agreement at 15.

8. Among the 38 representations and warranties are several that are directly relevant to the claims asserted by Plaintiffs in this matter are:

    - in section 3.6 of the Agreement, Defendants represented and warranted that the financial statements provided to Plaintiffs were, among other things, true and complete and fairly presented the financial position of Defendants;

    - in section 3.7 of the Agreement, Defendants represented and warranted that there were no debts or liabilities not reflected on the balance sheet or financial statement.

    - in section 3.13 of the Agreement, Defendants represented and warranted that the inventories purchased in the transaction were finished and saleable in the ordinary course of business;

    - in section 3.17 of the Agreement, Defendants represented and warranted that it owned all of the assets reflected on the balance sheet and that all of these were in good operating condition and well maintained. Section 3.17 also contains a representation that the assets being sold "constitute all assets necessary to permit Seller to conduct the Business as now conducted."

9. Eighty-four certain parts and inventory sold by Defendants in the transaction could not be sold and these parts were scrapped. The value of these parts on the company's balance sheet total $70,487.69. PX-11 and testimony of Patrick Crotty, Jim Aloi, and Robert Ober.

10. ALCOA paid $1,109.50 pursuant to invoice number 270377821 to Defendants when, pursuant to the agreement, that money should have been paid to Plaintiffs.

11. Pursuant to the Agreement, Plaintiffs are entitled to a working capital adjustment. The payment is simply the product of a formula as provided in the Agreement. Defendants previously acknowledged Plaintiffs entitlement to such a payment but have failed to make the required payment. The amount owed to Plaintiffs pursuant to the working capital adjustment is $100,928. Exhibits PX-1-5, PX-13, PX-22-25 and testimony of Joe Molino, Patrick Crotty, Jim Aloi, and Robert Ober.

12. Pursuant to Section 3.17 of the Agreement, Defendants represented that the purchased assets were of sufficient quantity and quality to run the business as Defendants had prior to the sale. This representation was false. Upon closing, Plaintiffs discovered that the sale of one Macturn machine and the poor performance of the other prevented Plaintiffs from operating the business as represented by Defendants. To address this deficiency, Plaintiffs were forced to undertake work that should have been performed by a Macturn machine at different locations of the business. This caused Plaintiffs damages. Testimony of Patrick Crotty, Jim Aloi, and Robert Ober.

13. Pursuant to Section 3.17 of the Agreement, Defendants represented that the purchased assets were of sufficient quantity and quality to run the business as Defendants had prior to the sale. This representation was false. Upon closing, Plaintiffs discovered that the sale of one Macturn machine and the poor performance of the other prevented Plaintiffs from operating the business as represented by Defendants. To address this deficiency, Plaintiffs were forced to expend substantial out of pocket costs repairing the one

remaining Macturn machine totaling $151,428.74. PX-14 and testimony of Patrick Crotty, Jim Aloi, and Robert Ober

14. Pursuant to Section 3.17 of the Agreement, Defendants represented that the purchased assets were of sufficient quantity and quality to run the business as Defendants had prior to the sale. This representation was false. Plaintiffs were forced to purchase a new machine and incur related expenses. This would not have been necessary but for the sale of one machine before the closing and the inadequate performance of the other machine. The cost of this was $370,757.65. PX-15 and Patrick Crotty, Jim Aloi, and Robert Ober.

Pursuant to Section 3.17 of the Agreement, Defendants represented that the purchased assets were of sufficient quantity and quality to run the business as Defendants had prior to the sale. This representation was false. Upon closing, Plaintiffs discovered that many of the purchased plans and drawings were inaccurate, incomplete, or otherwise could not be utilized by Plaintiffs in operation of the business. Plaintiffs have identified approximately 185 changes, the part in question, the nature of the change, and the cost associated with same. Damages for this issue total $127,250. PX-26 and testimony of Patrick Crotty, Jim Aloi, and Robert Ober.

## Conclusions of Law

1. The elements of the breach of contract claim are well-settled. Plaintiffs must prove (1) the existence of a contract; (2) the performance under the contract; (3) breach by a defendant; and (4) damages he sustained. See *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, 878 N.E.2d 66, ¶18. There is no dispute that there exists a contract and Plaintiffs performed their aspect of the contract by paying the purchase price.

2. Plaintiffs performed their obligations under the contract by paying the purchase price and otherwise fulfilling their obligations.

3. Defendants are obligated to multiple representations and warranties under the Agreement. Defendants breached the Agreement.

4. Plaintiffs presented sufficient evidence of their damages.

5. "Due diligence is expensive and parties to contracts in the mergers and acquisitions arena often negotiate for contractual representations that minimize a buyer's need to verify every minute aspect of a seller's business. In other words, representations like the ones made in the Asset Purchase Agreement serve an important risk allocation function." *Cobalt Operating, LLC v. James Crystal Enters.*, 2007 Del. Ch. LEXIS 108, *89, 2007 WL 2142926 (Del. Ch. July 20, 2007). "By obtaining the representations [they] did," Plaintiffs placed the risk [with respect to matters in the representations] on [Defendants.]" *Id*.

Respectfully submitted,

*/s/ Brian P. Muething*
Brian P. Muething (0076315)
Keating Muething & Klekamp, PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 579-3814
Fax: (513) 579-6457
bmuething@kmklaw.com


*Attorney for Plaintiffs,*
*ATSCO Holdings Corp. and HY-TECH Machine, Inc.*


## **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of August, 2020, I served a true and correct copy of the foregoing to all counsel of record.

*/s/ Brian P. Muething*
Brian P. Muething