UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ATSCO HOLDINGS CORP., *et al.* | ) | CASE NO. 1:15-CV-1586 |
| | ) | |
| *Plaintiffs*, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| AIR TOOL SERVICE COMPANY, *et al.* | ) | |
| | ) | |
| *Defendants*. | ) | |

---

**TRIAL BRIEF, PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW OF DEFENDANTS AIR TOOL SERVICE COMPANY, N/K/A X5432, INC. AND RICK J. SABATH**

---

By and through undersigned counsel and pursuant to this Court's Civil Trial Order (ECF # 44), Defendants Air Tool Service Company, n/k/a X5432, Inc. ("Air Tool") and Rick J. Sabath ("Sabath") (collectively, with Air Tool Service Co., the "Defendants"), hereby submit the following Trial Brief and Proposed Findings of Fact and Conclusions of Law, in advance of the Final Pre-Trial, scheduled for August 27, 2020.

## I.  STATEMENT OF FACTS

### A.  <u>Background Facts</u>.

This is an action for breach of contract and unjust enrichment arising from the Defendants' 2014 sale of Air Tool to Plaintiffs, pursuant to the terms of an Asset Purchase Agreement (the "Agreement").[1]  Defendants, in turn, have asserted a Counterclaim for Plaintiffs' own breach of the Agreement.

---

[1] Plaintiffs' Amended Complaint included a request for punitive damages; however, that request has already been dismissed by the Court.  (ECF # 26).

Air Tool formerly operated a business in Mentor, Ohio, involved in the design, engineering, and manufacturing of pneumatic motors and tools.  Sabath is the sole shareholder of Air Tool.  In an effort to remove Air Tool as a competitor of Plaintiff Hy-Tech (a wholly-owned subsidiary of P&F Industries, Inc. (NASDAQ: PFIN)), Plaintiffs negotiated the purchase of Air Tool from Defendants, which culminated in the Agreement.  Pursuant to the terms of the Agreement, Plaintiffs purchased Air Tool for a purchase price of $7,658,540.00, and the assumption of certain Assumed Payables pursuant to Section 2.3 of the Agreement.  Pursuant to Section 2.3.4 of the Agreement, Defendants were paid $7,241,040.00 at closing by wire transfer, with a balance of $387,500.00 (the "Closing Escrow Payment") to be paid by Plaintiffs pursuant to the terms of a separate Escrow Agreement.

Prior to closing, Plaintiffs were given free and unencumbered access to inspect all of Air Tool's machinery, assets, and inventory for an extended period of time.  In addition, Plaintiffs were provided full access to Air Tool's books, records, and properties.  Plaintiffs engaged numerous lawyers, accountants, and business persons to inspect, test, and perform due diligence regarding Air Tool, from April through August 2014.  Following this period of full access, the sale of Air Tool was consummated, pursuant to the terms of the Agreement.  Despite Defendants' fulfillment of all material terms placed upon them by the Agreement and Escrow Agreement, Plaintiffs have refused to release the Closing Escrow Payment.  Instead, Plaintiffs initiated the instant lawsuit, which Defendants believe is an attempt to cram down a deal even more favorable to Plaintiffs, after already having achieved their goal to eliminate an industry competitor.

The Complaint asserts that Plaintiffs are entitled to a purchase price adjustment as a result of alleged deficiencies with inventory transferred under the Agreement.  Specifically, Plaintiffs allege the following items were "non-saleable and without value" post-sale: (1) grinders and

grinder parts inventory relating to a customer, ATA; (2) two tools manufactured specifically for a customer, Michigan Pneumatic; (3) parts manufactured prior the closing for a customer, TorcUp; and (4) various other parts and assemblies.  *See* Amended Complaint (ECF # 4), at ¶¶ 13-17.  The Complaint also alleges that the Defendants breached the Agreement, and thereby caused the Plaintiffs to sustain damages, as the result of the condition of certain machinery transferred to Plaintiffs under the Agreement, including "operational losses" and damages associated with "lost productivity."  *Id.* at ¶¶ 18-24.[2]

This case was previously scheduled for a Bench Trial.  In June 2017, Defendants filed several motions in limine. (ECF # 47, 48, and 52).  The first motion (ECF # 47) addressed Plaintiffs' failure to disclose experts as required under Civ.R. 26, and requested that the Court prohibit Plaintiffs from (a) introducing expert witnesses at trial, and (b) from introducing expert testimony through lay witnesses at trial.  On December 20, 2017, the Court issued an Order granting Defendants' motion as to the introduction of any expert witnesses.  *See* ECF # 63, at p.1.  As for the introduction of expert testimony through lay witnesses, the Court indicated that portion of the motion would be more appropriately addressed at trial, "based on the qualifications of the witnesses and the substance of the testimony presented."  *Id.*, at p. 4.

Plaintiffs' second motion in limine (ECF # 48) sought to exclude the presentation of evidence concerning claims abandoned by Plaintiffs in discovery (*i.e.*, claims referenced in Paragraphs 25-27 of the Amended Complaint that related to intellectual property, drawings, and

---

[2] In addition to these claims, the Complaint also alleges that Defendants breached the Agreement as a result of (1) certain product plans and drawings allegedly not being materially accurate and complete; (2) an Air Tool customer allegedly claimed ownership over certain unidentified intellectual property that had been sold to Plaintiffs by Defendants; and (3) certain credits allegedly owed to a customer for warranty claims, and that such credits were not reserved on Air Tool's balance sheet..  *See* Amended Complaint, at ¶¶ 25-27.  However, as explained in Defendants' separately filed Motion in Limine, or, in the alternative, Motion for Partial Summary Judgment (the "Motion") (ECF # 48), Plaintiffs abandoned these claims in the course of discovery.  Defendants' motion was granted on December 20, 2017.  *See* ECF # 63.

credits allegedly owed to Michigan Pneumatic).  As part of its December 20th Order, the Court granted this motion.  *See* ECF # 63, at 4.

Defendants' Counterclaim asserts that, despite Defendants having fulfilled all material terms placed upon them by the Asset Purchase Agreement and Escrow Agreement, Plaintiffs have refused to release the Closing Escrow Payment to Plaintiffs, in violation of the Agreement and Escrow Agreement.  *See* Counterclaim (ECF # 11), at ¶¶ 1-18.

**B.**     **Plaintiffs' Claims.**

Plaintiffs' claims for breach of contract and unjust enrichment are premised upon alleged breaches of representations or warranties contained in the Agreement.  *See generally*, Amended Complaint (the "Complaint") (ECF # 4).  Plaintiffs characterized these claims in their original Trial Brief (ECF # 54) as follows:

| Claim | Plaintiffs' Characterization of Claim | Litigation Status |
|---|---|---|
| Claim 1 | Poor Quality Parts | Voluntarily dismissed with prejudice |
| Claim 2 | Unsellable Inventory at Michigan Pneumatic | Voluntarily dismissed with prejudice |
| Claim 3 | Unsellable Inventory at TorcUp | Voluntarily dismissed with prejudice |
| Claim 4 | Poor Quality Parts Scrapped | Voluntarily dismissed with prejudice |
| Claim 5 | A/R Mispayment | Voluntarily dismissed with prejudice |
| Claim 6 | Working Capital Adjustment | Remanded on appeal |
| Claim 7 | MacTurn Inefficiency, and Work Performed Elsewhere | Remanded on appeal |
| Claim 8 | MacTurn Maintenance | Remanded on appeal |
| Claim 9 | MacTurn Replacement | Remanded on appeal |

| Claim 10 | Inaccurate Drawing and Plans[3] | Abandoned in discovery |
|----------|----------------------------------|------------------------|

C. **Plaintiffs' Contractual Claims**.

1. *Working Capital Adjustment*

This claim required Plaintiffs to have timely and completely conducted an inventory and provided defendants with an Inventory Acknowledgement pursuant to Section 2.3 of the Agreement.  In failing their obligations, Plaintiffs are precluded from proving entitlement to a working capital adjustment.

2. *MacTurn Inefficiency and Work Performed Elsewhere*

Plaintiffs are precluded from providing needed expert witness testimony on this claim and have never identified the amount of damages in discovery or in their Trial Brief.  Further, Plaintiffs waived all contract claims against Defendants by stipulating to a judgment on Defendants' counterclaim for breach of that same contract.  *See* ECF # 94.  Finally, all of Defendants' representations as to the MacTurn will be demonstrated as true at trial.

3. *MacTurn Maintenance*

Plaintiffs are precluded from providing needed expert witness testimony on this claim.  Further, Plaintiffs waived all contract claim against Defendants by stipulating to a judgment on Defendants' counterclaim for breach of that same contract.  *See* ECF # 94. Finally, all of Defendants' representations as to the MacTurn will be demonstrated as true at trial.

---

[3] This claim is alleged in Paragraph 25 of the Complaint and was abandoned by Plaintiffs in discovery, as set forth in Defendants' separately-filed (and unopposed) Motion in Limine, or, in the alternative, Motion for Partial Summary Judgment (ECF # 48), which was granted by the Court on December 20, 2017.  *See* ECF # 63.

### 4.  *MacTurn Replacement*

Plaintiffs are precluded from providing needed expert witness testimony on this claim.  Further, Plaintiffs waived all contract claim against Defendants by stipulating to a judgment on Defendants' counterclaim for breach of that same contract.  *See* ECF # 94. Finally, all of Defendants' representations as to the MacTurn will be demonstrated as true at trial.

### 5.  *Plaintiffs' Claims are Subject to a $75,000.00 Liability Threshold under Section 11 of the Agreement.*

The Court's December 20th Order found that the indemnification provision of the Agreement is the parties' "sole and exclusive remedy[.]"  *See* ECF # 64, at p. 8.   Pursuant to Section 11.3 of the Agreement, Defendants **are not** liable for the first $75,000.00 of Plaintiffs' alleged losses:

> 11.3    **Limitations.**  Notwithstanding anything herein to the contrary, as to matters which are subject to indemnification pursuant to this Section 11.2.1(b), (a) Seller and Shareholder **shall not be liable unless and until the aggregate Losses** to the Indemnified Purchaser Parties resulting from such otherwise indemnifiable matters under Section 11.2.1(b) . . . shall **exceed a cumulative aggregate of $75,000** (the "Indemnification Threshold" (with Seller and Shareholder being responsible for all Losses that exceed the Indemnification Threshold)[.] * * * (Emphasis added).

Having failed to identify or provide disclosures required under Fed. R. Civ. P. 26 for any expert witness to testify in support of their purported claims, Plaintiffs will be unable to establish damages in excess of this threshold.   Further, pursuant to Section 11.4 of the Agreement, Defendants would have the right to "withhold from and offset against any amounts due to Seller, pursuant to this Agreement or otherwise, the amount of such Claims."  Plaintiffs walked out on their lease for the Mentor facility owned by Mr. Sabath, leaving several months of rent unpaid,

which would serve as a further set-off, even if Plaintiffs could somehow establish damages in excess of $75,000.00, which they cannot.

> ### 6.    *Waiver*

All of Plaintiffs' contract claim were expressly waived by authorized agents of Plaintiffs, as will be shown at trial.

## II.    CONTROLLING LAW

### A.    <u>Breach of Contract.</u>

To prevail on their claims for breach of contract, Plaintiffs must prove: (1) the existence of a binding contract; (2) that the nonbreaching party performed its contractual obligations; (3) the other party failed to fulfill its contractual obligations without legal excuse; and (4) the nonbreaching party suffered damages as a result of the breach. *Nachar v. PNC Bank, Nat. Ass'n,* 901 F.Supp.2d 1012, 1018 (N.D.Ohio 2012) (Boyko, J.), citing *Baghani v. Charter One Bank F.S.*B., No. 91373, 2009 WL 280399, ¶ 13 (Ohio Ct. App. Feb. 5, 2009).

While no dispute exists as to the existence of a written contract between the parties, Plaintiffs will be unable to satisfy the remaining three (3) elements for a breach of contract claim. As to the second element, the evidence at trial will show that Plaintiffs failed to perform their contractual obligations under the contract.  For example, Plaintiffs were required to perform a count of Air Tool's inventory and provide Defendants with an Inventory Acknowledgement within twenty (20) days after the Closing Date.  *See* Agreement, at § 2.3.2.1.  Plaintiffs failed to properly and diligently conduct an inventory review in violation of the Agreement, and did not provide Defendants with an Inventory Acknowledgement until October 16, 2014 – sixty-two (62) days after the Closing Date.  Plaintiffs were also required to pay Defendants the Closing Escrow Payment of $387,500.00, and failed to do so.  *See* Agreement, at § 2.3.4.  Moreover, although

Plaintiffs' purported claims fall under the indemnification provision of the Agreement, and Plaintiffs specifically waived the right to assert causes of action of the kind they are now asserting, Plaintiffs failed to perform in accordance with the indemnification provision of the Agreement and initiated the instant lawsuit.

As to the third element, the condition and functionality of highly technical machines and machine parts such as the ones at issue in this matter are beyond the experience or knowledge of an average fact finder, and thus fall under the category of expert testimony.  *See* Fed. R. Evid. 702; *see also*, *Guild Assoc., Inc. v. Bio-Energy (Washington), LLC*, 309 F.R.D. 436, 441 (S.D.Ohio 2015) (noting that, in order to resolve a breach of contract action arising from the alleged failure of a Nitrogen Removal Unit machine used to purify landfill gas into pipeline quality gas, "it is likely that the jury will need to sort through complex testimony from expert witnesses, highly technical evidence pertaining to machine functions at the BEW plant, and evidence and testimony regarding contract clauses and sub clauses").  Plaintiffs, having failed to properly and diligently conduct an inventory review within twenty (20) days after the Closing Date, in violation of the Agreement, and having failed to identify experts or make the disclosures required under Civ.R. 26, will be unable to satisfy their burden as to this element.

As to the final element, a "party cannot recover damages for breach of contract beyond the amount that is established by the evidence with reasonable certainty."  *Younglove Const., LLC v. PSD Dev., LLC*, 782 F.Supp.2d 457, 461 (N.D. Ohio 2011).  "Proving damages for breach of a contract requires greater certainty than in the proof of damages for a tort."  *Younglove Const., LLC*, 782 F.Supp.2d at 461, fn 1, citing *Kinetico, Inc. v. Independent Ohio Nail Co*., 19 Ohio App.3d 26, 30, 482 N.E.2d 1345 (Ohio Ct. App. 8th Dist. 1984); also citing *Hacker v. Mail*, 1996 WL 346628, n. 5 (Ohio Ct. App. 12th Dist. 1996) (comparing Rest. 2d Contracts § 352 (1981) with

Rest. 2d Torts § 912 (1979)); 22 Am. Jur. 2d Damages § 484 (1988).  To prove damages with reasonable certainty, expert testimony is often required.  *See, e.g., Wood Elec., Inc., Plaintiff-Appellee, v. Ohio Facilities Construction Commission*, 2017-Ohio-2743, ¶ 20 (Ohio Ct. App. 10th Dist. 2017) (expert presented on issue of claimed damages associated with "lost productivity"); *Emerman v. Financial Commodity Investments, L.L.*C., N.D.Ohio No. 1:13CV2546, 2016 WL 231309, **8-9 (N.D. Ohio 2016) (granting summary judgment where plaintiff's alleged damages, similarly to Plaintiffs' alleged damages here, were supported only by "multi-page spreadsheets, each of which contains multiple columns of unexplained numbers and abbreviations" and finding plaintiff's failure to obtain an expert "perplexing when one considers the fact that they had every opportunity to obtain expert testimony regarding damages").  Plaintiffs, having failed to identify experts or make the disclosures required under Civ.R. 26, will be unable to satisfy their burden as to this element.

### B.  Unjust Enrichment.

Under Ohio law, there are three elements Plaintiff must prove in order to make a claim for unjust enrichment. There must be: (1) a benefit conferred by the plaintiff upon the defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit under the circumstances where it would be unjust to do so without payment.  *Premier Colorscan Instruments Pvt. Ltd. v. Q–Lab Corp*., N.D.Ohio No. 1:15CV1900, 2016 WL 6124430, *5 (N.D. Ohio Oct. 19, 2016) (Boyko, J.), citing *Reisenfeld & Co. v. Network Group, Inc*., 277 F.3d 856, 860 (6th Cir. 2002). "The doctrine of unjust enrichment does not apply when a contract actually exists; rather, it is an equitable remedy to be used only when the court finds there is no contract." *Premier Colorscan*, 2016 WL 6124430, *5 (citing *Everett v. Verizon Wireless, Inc*., 460 F.3d 818 (6th Cir. 2006).

In Ohio, recovery under an unjust enrichment claim is not permitted where an express contract covers the same subject, with the exception that if the party the claim is against acted in bad faith, then the unjust enrichment claim may proceed.  *See, e.g., White v. Wells Fargo Bank, NA*, 904 F. Supp. 2d 756, 767 (N.D. Ohio 2012) (explaining the rule and bad faith exception); *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975) (recognizing the rule and the exception for bad faith).  The bad faith exception is limited to instances of bad faith where the party was induced into "entering into the contract, or . . . in terminating the contract."  *White*, 904 F. Supp. 2d at 767 (quoting *Randolph*, 526 F.2d at 1387) (internal quotation marks omitted). "Bad faith is that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest."  *Id.*, quoting *Casserlie v. Shell Oil Co.*, 121 Ohio St.3d 55, 2009-Ohio-3, 902 N.E.2d 1, ¶ 32 (internal quotation marks omitted).

Here, there is no dispute as to the existence of an express written contract between the parties.  Moreover, Plaintiffs' Amended Complaint does not allege bad faith or fraud on the part of either Defendant.  As a result, Plaintiffs' claim for unjust enrichment must fail as a matter of law.  *See, e.g., Premier Colorscan*, 2016 WL 6124430 at *5 (Boyko, J.) ("Because Plaintiff has not alleged fraud or bad faith in its unjust enrichment claim, Plaintiff does not demonstrate an issue of material fact.").

## III.    PROPOSED WITNESSES

    **A.**    Custodian of Records/Corporate Representative, Air Tool Service Company, NKA X5432, Inc., c/o Counsel for Defendants;

    **B.**    Rick J. Sabath, Air Tool Service Company, NKA X5432, Inc., 19129 Peninsula Point Drive, Cornelius, NC  28031;

    **C.**    Michael Sivula, CFO, Air Tool Service Company, NKA X5432, Inc.,  11465 Glenmora Drive, Chardon, OH 44024;

**D.**     James Becker, Vice President, Air Tool Service Company, NKA X5432, Inc., 11191 Wilson Mills Rd., Chardon, OH 44024;

**E.**     Custodian of Records/Corporate Representative, Plaintiff/Counter-Defendant ATSCO Holdings Corp., c/o counsel for Plaintiffs (as if on cross examination);

**F.**     Custodian of Records/Corporate Representative, Plaintiff/Counter-Defendant Hy-Tech Machine, Inc., c/o counsel for Plaintiffs (as if on cross examination);

**G.**     Joseph Molino, c/o Counsel for Plaintiffs (as if on cross examination);

**H.**     Elizabeth Smail, c/o Counsel for Plaintiffs (as if on cross examination);

**I.**     Richard Horowitz, c/o Counsel for Plaintiffs (as if on cross examination);

**J.**     Jim Aloi, c/o Counsel for Plaintiffs (as if on cross examination);

**K.**     Robert Ober, c/o Counsel for Plaintiffs (as if on cross examination);

**L.**     Any individuals identified in the disclosures or discovery responses of Plaintiffs or who may be called by Plaintiffs at trial;

**M.**     Any person necessary to authenticate documents introduced into evidence;

**N.**     Defendants reserve the right to call any additional witness for the purposes of rebuttal

## IV.     PROPOSED EXHIBITS

**A.**     Asset Purchase Agreement dated August 13, 2014 by and among ATSCO Holdings Corp., Hy-Tech Machine, Inc., Air Tool Service Company, and Rick J. Sabath;

**B.**     Escrow Agreement dated August 13, 2014 by and among ATSCO Holdings Corp., Hy-Tech Machine, Inc., Air Tool Service Company, and Rick J. Sabath;

**C.**     Inventory Acknowledgement dated October 16, 2014;

**D.**     Due Diligence Materials – Binder 1;

**E.**     Due Diligence Materials – Binder 2;

**F.**     Due Diligence Materials – Binder 3;

**G.**     Due Diligence Materials – Binder 4 - Schedules;

**H.**     Due Diligence Materials – Binder 5 – Schedules, Other Receivables;

**I.**     June 2014 Memorandum, bates labeled HY0602;

**J.**     June 2014 Memorandum, bates labeled HY0603;

**K.**     Email from Mike Sivula dated April 25, 2014, bates labeled HY0829-HY0830;

**L.**     July 18, 2014 Email from Elizabeth Smail to Joe Molino, bates labeled HY0897;

**M.**     Plaintiffs' Response to Defendants' First Set of Interrogatories and Requests for Production of Documents and Second Set of Requests for Production of Documents;

**N.**     Any and all pleadings, motions or discovery responses filed or served in the instant matter;

**O.**     Any and all documents identified by other parties to this action; and

**P.**     Defendants reserve the right to introduce any and all necessary exhibits for the purposes of rebuttal.

**V.     PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**FINDINGS OF FACT**

1.     Plaintiff ATSCO Holdings Corp. ("ATSCO") is a Delaware corporation with its principal place of business in Pennsylvania.  (Amended Complaint, at ¶ 1, testimony of Plaintiffs' representatives).

2.     Plaintiff Hy-Tech machine, Inc. ("Hy-Tech") is a Delaware corporation with its principal place of business in Pennsylvania.  Hy-Tech and ATSCO are, collectively, the "Plaintiffs." (Amended Complaint, at ¶ 2, testimony of Plaintiffs' representatives).

3.     Defendant Air Tool Service Company, n/k/a X5432, Inc. ("Air Tool") is an Ohio Corporation which formerly operated a business involved in the designing, engineering, and manufacturing of pneumatic motors and tools in Mentor, Ohio.  Air Tool was a competitor of Hy-Tech.  (Answer and Counterclaim, at ¶ 1, testimony of Sabath).

4.      Defendant Rick J. Sabath ("Sabath") is the sole shareholder of Air Tool.  Sabath and Air Tool are, collectively, the "Defendants."  (Answer and Counterclaim, at ¶ 2, testimony of Sabath).

5.      Plaintiffs negotiated the sale of Air Tool from Defendants to Plaintiffs, and on August 13, 2014, Plaintiffs and Defendant entered into an Asset Purchase Agreement (the "Agreement").  (Def. Proposed Ex. A, testimony of Sabath, Molino, Horowtiz, Ober).

6.      During the months of April, May, June, July, and August 2014, Plaintiffs were provided free and unencumbered access to inspect all of Air Tool's machinery, assets, and inventory.  In addition, Plaintiffs were provided full access to Air Tool's books, records, and properties.  Plaintiffs engaged numerous lawyers, accountants, and business persons to inspect, test, and perform due diligence regarding Air Tool, from April through August 2014.  Following this period of access, the sale of Air Tool was consummated, pursuant to the terms of the Agreement.  (Def. Proposed Exs. D-L, testimony of Sabath, Sivula, Molino, Smail, Horowtiz, Ober, Aloi).

7.      Plaintiffs purchased Air Tool for a purchase price of $7,658,540.00, and the assumption of certain Assumed Payables pursuant to Section 2.3 of the Agreement.  Pursuant to Section 2.3.4 of the Agreement, Defendants were to be paid $7,241,040.00 at closing by wire transfer, with a balance of $387,500.00 (the "Closing Escrow Payment") to be paid by Plaintiffs pursuant to the terms of an Escrow Agreement.  (Def. Proposed Ex. A, at §§ 2.3 and 2.3.4).

8.      Pursuant to Section 2.3.2.1 of the Agreement, Plaintiffs were required to perform a count of Air Tool's inventory and provide Defendants with an Inventory Acknowledgement within twenty (20) days after the Closing Date (August 13, 2014):

> **2.3.2.1 Inventory.** Not later than twenty (20) days after the Closing Date, a physical count of the Inventory (the "Inventory Count") will be taken by

Michael Sivula, Nicholas Russell and Michael Turick, or if for any reason any of such persons does not take such Inventory Count, such other persons as may be reasonably acceptable to Purchaser and Seller (such acceptance, if any, to be evidenced by written agreement between Purchaser and Seller), in accordance with past practices of Seller and other reasonable procedures of Purchaser, as of the date of such Inventory Count. Purchaser shall give Seller reasonable advance notice of the Inventory Count and allow Shareholder to be physically present during such count. Not later than twenty (20) days after the Closing Date, a roll-back (the "Roll-Back") of the Inventory Count (the "Roll-Back Inventory") to the Effective Time will be performed by employees of Purchaser. The Roll-Back will be performed in a manner consistent with the method utilized in preparing the Audited Financial Statements. A statement setting forth the Roll-Back Inventory based upon such Roll-Back (the "Inventory Acknowledgment"), will be delivered by Purchaser to Seller not later than twenty (20) days after the Closing Date. The Roll-Back Inventory, as set forth in the Inventory Acknowledgment is hereby deemed final, conclusive and binding, absent manifest error.

9.     Plaintiffs provided Defendants with an Inventory Acknowledgement on October 16, 2014 – 62 days after the Closing Date – which document refers to Plaintiffs' inventory review as "ongoing." (Def. Proposed Ex. C).

10.    Section 11.3 of the Agreement provides:

11.3 Limitations. Notwithstanding anything herein to the contrary, as to matters which are subject to indemnification pursuant to this Section 11.2.1 (b), (a) Seller and Shareholder shall not be liable unless and until the aggregate Losses to the Indemnified Purchaser Parties resulting from such otherwise indemnifiable matters under Section 11.2.l(b) (and (x) any Assumed Warranty Obligations described in Section 10.1 and (y) any Customer other Business Relationships described in Section 10.7) shall exceed a cumulative aggregate of $75,000 (the "Indemnification Threshold") (with Seller and Shareholder being responsible for all Losses that exceed the Indemnification Threshold), and (b) the aggregate amount of any payments that shall be payable by Seller and Shareholder as a result of any Claims for indemnification made under Section 11.2.1(b) with respect to a misrepresentation or breach of warranty shall be limited to $6 million (the "General Maximum Limitation"); provided, however, that neither the Indemnification Threshold nor the General Maximum Limitation shall apply to (i) Claims for Losses relating to a breach of the representations and warranties of Seller set forth in Sections 3.1 through 3.5, 3.10, 3.12, 3.17 (first sentence), 3.21, 3.24, 3.26, 3.27 and 3.37, (ii) Claims for Losses relating to the Retained Liabilities, (iii) Claims relating to any unpaid Taxes owed by Seller and/or Shareholder, including any sales

Tax associated with the transactions contemplated hereby and/or required to be paid by, or on behalf of Seller in connection with the operations of its Business, or otherwise, or (iv) Claims for Losses relating to a breach of any representation or warranty that was actually known to be false when made or for fraud. For purposes of determining whether the Indemnification Threshold has been met and in the calculation of losses, all "materiality" qualifiers in this Agreement shall be disregarded.

11. Section 11.5(c) of the Agreement provides:

The parties acknowledge and agree that their sole and exclusive remedy with respect to any and all Claims (other than Claims arising from fraud, criminal activity or willful misconduct on the part of a party hereto in connection with the transactions contemplated by this Agreement) for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement, shall be pursuant to the indemnification provisions set forth in this Article XI.  In furtherance of the foregoing, **each party hereby waives, to the fullest extent permitted under Law, any and all rights, Claims and causes of Action for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement it may have against the other parties hereto and their Affiliates and each of their respective Representatives arising under or based upon Law, except pursuant to the indemnification provisions set forth in this Article XI.**  * * * (Emphasis added).

12. Subsequent to the sale, Plaintiffs closed the facility operated by Air Tool in Mentor, Ohio.  (Testimony of Sabath, Molino, Horowtiz, Ober)

13. Plaintiffs have refused to permit Defendants to be paid the Closing Escrow Payment out of the escrow account.  (Testimony of Sabath, Molino, Horowitz)

14. Plaintiffs commenced this action on August 10, 2015.  An Amended Complaint was filed on October 22, 2015.  The Amended Complaint asserts causes of action for breach of contract and unjust enrichment. (Amended Complaint)

15. The Amended Complaint also alleges that Defendants breached the Agreement, and thereby caused the Plaintiffs to sustain damages, as the result of the condition of certain

machinery transferred to Plaintiffs under the Agreement, including "operational losses" and damages associated with "lost productivity."   (*Id.* at ¶¶ 18-24).

16. The discovery deadline in this case was January 20, 2017. (*See* Order [non-document] dated November 10, 2016).

17. Plaintiffs were asked by Defendants in discovery to identify those experts whom they intended to call at trial in support of their claims, and Plaintiffs identified none. (Pltf's Responses to Interrogatories and Requests for Production of Documents, in response to Interrogatory No. 5, testimony of Plaintiffs' representatives).

18. Plaintiffs did not provide expert disclosures for any witnesses as required under Fed.R. Civ. P. 26(a)(2)(B) or (C) within the deadline established by Fed.R. Civ. P. 26(a)(2)(D).

19. The Amended Complaint further alleges that Defendants breached the Agreement as a result of (1) certain product plans and drawings allegedly not being materially accurate and complete; and (2) an Air Tool customer allegedly claimed ownership over certain unidentified intellectual property that had been sold to Plaintiffs by Defendants. (Amended Complaint, at ¶¶ 25-26).

20. In their Discovery Responses, Plaintiffs indicated that such claims were "withdrawn." (Pltf's Responses to Interrogatories and Requests for Production of Documents, in response to Interrogatory No. 17 and Request for Production No. 14, testimony of Plaintiffs' representatives).

21. Finally, the Amended Complaint alleges that Defendants breached the Agreement because certain credits allegedly owed to a customer for warranty claims were not reserved on Air Tool's balance sheet.  (Amended Complaint, at ¶ 27).

22. When asked in discovery to state the basis for this claim, Plaintiffs indicated these credits actually relate to parts a customer was attempting to return prior to closing, but which were, in fact, returned and credited by Plaintiffs, after closing.  Plaintiffs also did not itemize any alleged damages to this claim as part of their Discovery Responses. (Pltf's Responses to Interrogatories and Requests for Production of Documents, in response to Interrogatory Nos. 18 and 20, testimony of Plaintiffs' representatives).

23. Plaintiffs stipulated to judgment in favor of Defendants on Defendants' contract counterclaim.  *See* ECF # 94.

24. Plaintiffs' agents expressly waived their contractual claims against Defendants regarding the MacTurn.

## CONCLUSIONS OF LAW

1.      Plaintiffs bear the burden of proving their entitlement to relief under a preponderance of the evidence.  *See Eggert v. Meritain Health, Inc*., 428 Fed.Appx. 558, 563 (6th Cir. 2011), citing *Langfan v. Carlton Gardens Co*., 183 Ohio App.3d 260, 916 N.E.2d 1079, 1087 (2009) (as to breach of contract); *see also Gerboc v. ContextLogic, Inc*., N.D.Ohio No. 1:16 CV 928, 2016 WL 6563684, *5 (N.D. Ohio 2016), citing *Johnson v. Microsoft Corp*., 106 Ohio St. 3d 278, 285, 834 N.E.2d 791, 799 (2005) (as to unjust enrichment).  Plaintiffs have not met their burden with respect to the facts or the law.

### A.      Plaintiffs Did Not Prove their Breach of Contract Claims.

2.      To prevail on their claims for breach of contract, Plaintiffs must prove: (1) the existence of a binding contract; (2) that the nonbreaching party performed its contractual obligations; (3) the other party failed to fulfill its contractual obligations without legal excuse; and (4) the nonbreaching party suffered damages as a result of the breach.  *Nachar v. PNC Bank, Nat.*

*Ass'n*, 901 F.Supp.2d 1012, 1018 (N.D.Ohio 2012) (Boyko, J.), citing *Baghani v. Charter One Bank F.S.*B., No. 91373, 2009 WL 280399, ¶ 13 (Ohio Ct. App. Feb. 5, 2009).

3.      As to the first element, no dispute exists as to the existence of a written contract between the parties.  However, Plaintiffs have not established the remaining three (3) elements of their breach of contract claim.

4.      As to the second element, Plaintiffs have not established their own performance under the Agreement.   Plaintiffs were required to perform a count of Air Tool's inventory and provide Defendants with an Inventory Acknowledgement within twenty (20) days after the Closing Date.  *See* Agreement, at § 2.3.2.1.  Plaintiffs failed to properly and diligently conduct an inventory review in violation of the Agreement, and did not provide Defendants with an Inventory Acknowledgement until October 16, 2014 – sixty-two (62) days after the Closing Date.

5.      Plaintiffs were also required to pay Defendants the Closing Escrow Payment of $387,500.00, and failed to do so.  *See* Agreement, at § 2.3.4.  Plaintiffs stipulated to judgment in favor of Defendants on Defendants' contract counterclaim, necessarily precluding a finding in favor of Plaintiffs as to their claim for breach of the same contract.  Plaintiffs' purported claims fall under the indemnification provision of the Agreement, and Plaintiffs specifically waived the right to assert causes of action of the kind they are now asserting, as more fully discussed below. Consequently, Plaintiffs have not met their burden as to this element.

6.      As to the third element, the condition and functionality of highly technical machines and machine parts such as the ones at issue in this matter are beyond the experience or knowledge of an average fact finder, and thus fall under the category of expert testimony.  *See* Fed. R. Evid. 702; *see also*, *Guild Assoc., Inc. v. Bio-Energy (Washington), LLC*, 309 F.R.D. 436, 441 (S.D.Ohio 2015) (noting that, in order to resolve a breach of contract action arising from the alleged failure

of a Nitrogen Removal Unit machine used to purify landfill gas into pipeline quality gas, "it is likely that the jury will need to sort through complex testimony from expert witnesses, highly technical evidence pertaining to machine functions at the BEW plant, and evidence and testimony regarding contract clauses and sub clauses").  Plaintiffs, having failed to properly and diligently conduct an inventory review within twenty (20) days after the Closing Date, in violation of the Agreement, and having failed to identify experts or make the disclosures required under Civ.R. 26, have not met their burden as to this element.

7.      As to the final element, a "party cannot recover damages for breach of contract beyond the amount that is established by the evidence with reasonable certainty."  *Younglove Const., LLC v. PSD Dev., LLC*, 782 F.Supp.2d 457, 461 (N.D. Ohio 2011).  "Proving damages for breach of a contract requires greater certainty than in the proof of damages for a tort."  *Younglove Const., LLC*, 782 F.Supp.2d at 461, fn 1, citing *Kinetico, Inc. v. Independent Ohio Nail Co*., 19 Ohio App.3d 26, 30, 482 N.E.2d 1345 (Ohio Ct. App. 8th Dist. 1984); also citing *Hacker v. Mail*, 1996 WL 346628, n. 5 (Ohio Ct. App. 12th Dist. 1996) (comparing Rest. 2d Contracts § 352 (1981) with Rest. 2d Torts § 912 (1979)); 22 Am. Jur. 2d Damages § 484 (1988).  To prove damages with reasonable certainty, expert testimony is often required.  *See, e.g., Wood Elec., Inc., Plaintiff-Appellee, v. Ohio Facilities Construction Commission*, 2017-Ohio-2743, ¶ 20 (Ohio Ct. App. 10th Dist. 2017) (expert presented on issue of claimed damages associated with "lost productivity"); *Emerman v. Financial Commodity Investments, L.L.*C., N.D.Ohio No. 1:13CV2546, 2016 WL 231309, **8-9  (N.D. Ohio 2016) (granting summary judgment where plaintiff's alleged damages, similarly to Plaintiffs' alleged damages here, were supported only by "multi-page spreadsheets, each of which contains multiple columns of unexplained numbers and abbreviations" and finding plaintiff's failure to obtain an expert "perplexing when one considers the fact that they had every

opportunity to obtain expert testimony regarding damages"). Plaintiffs, having failed to identify experts or make the disclosures required under Civ.R. 26, have not met their burden as to the element of damages.

### B. Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law.

8. Under Ohio law, there are three elements Plaintiffs must prove in order to make a claim for unjust enrichment. There must be: (1) a benefit conferred by the plaintiff upon the defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit under the circumstances where it would be unjust to do so without payment. *Premier Colorscan Instruments Pvt. Ltd. v. Q–Lab Corp*., N.D.Ohio No. 1:15CV1900, 2016 WL 6124430, *5 (N.D. Ohio Oct. 19, 2016) (Boyko, J.), citing *Reisenfeld & Co. v. Network Group, Inc*., 277 F.3d 856, 860 (6th Cir. 2002).

9. The doctrine of unjust enrichment does not apply when a contract actually exists; rather, "it is an equitable remedy to be used only when the court finds there is no contract." *Premier Colorscan*, 2016 WL 6124430, *5 (citing *Everett v. Verizon Wireless, Inc*., 460 F.3d 818 (6th Cir. 2006)).

10. In Ohio, recovery under an unjust enrichment claim is not permitted where an express contract covers the same subject, with the exception that if the party the claim is against acted in bad faith, then the unjust enrichment claim may proceed. *See, e.g., White v. Wells Fargo Bank, NA*, 904 F. Supp. 2d 756, 767 (N.D. Ohio 2012) (explaining the rule and bad faith exception); *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975) (recognizing the rule and the exception for bad faith). The bad faith exception is limited to instances of bad faith where the party was induced into "entering into the contract, or . . . in terminating the contract." *White*, 904 F. Supp. 2d at 767 (quoting *Randolph*, 526 F.2d at 1387)

(internal quotation marks omitted). "Bad faith is that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest." *Id.*, quoting *Casserlie v. Shell Oil Co.*, 121 Ohio St.3d 55, 2009-Ohio-3, 902 N.E.2d 1, ¶ 32 (internal quotation marks omitted)

11. Here, in addition to the fact that Plaintiffs have waived the right to pursue a claim for unjust enrichment, there is no dispute as to the existence of an express written contract between the parties. Moreover, Plaintiffs' Amended Complaint does not allege bad faith or fraud on the part of either Defendant. As a result, Plaintiffs' claim for unjust enrichment fails as a matter of law. *See, e.g., Premier Colorscan*, 2016 WL 6124430 at *5 (Boyko, J.) ("Because Plaintiff has not alleged fraud or bad faith in its unjust enrichment claim, Plaintiff does not demonstrate an issue of material fact.").

## VI. EVIDENTIARY ISSUES

### A. Expert Witnesses

Defendants previously filed a Motion in Limine to Exclude Expert Opinion Testimony and to Limit Lay Opinion Testimony (ECF # 47). As for the introduction of expert testimony through lay witnesses, the Court indicated in its December 20th Order that this portion of Defendants' motion would be more appropriately addressed at trial, "based on the qualifications of the witnesses and the substance of the testimony presented." *See* ECF # 63, at p. 4. The question for the Court is, can lay testimony be solely relied upon to determine whether various pneumatic tools and their components were defectively designed or manufactured or unrepairable and thus non-saleable and without value? It would appear only a qualified expert in the design, manufacture and repair of pneumatic tools and their components could answer that question. Because Plaintiffs' allegations are based upon "scientific, technical, or other specialized knowledge" for which expert

testimony is plainly required, the Court should preclude the introduction of improper lay opinion testimony at trial.

### B. Issue Preclusion

Whether Plaintiffs are precluded from introducing evidence at trial contradicting the stipulated judgment in favor of Defendants' contract counterclaim.

## VII.  ESTIMATED TRIAL LENGTH

Depending upon the Court's resolution of Defendants' pending motions in limine, Defendants anticipate a bench trial of 1-3 days.

Respectfully submitted,

/s/ Tim L. Collins
Tim L. Collins (0033116)
tcollins@tddlaw.com
Elizabeth E. Collins (0091032)
ecollins@tddlaw.com
THRASHER DINSMORE & DOLAN LPA
1111 Superior Avenue, Suite 412
Cleveland, Ohio 44114
Telephone: 216-255-5431
Facsimile: 216-255-5450

and

Mark A. DiCello (0063924)
madicello@dlcfirm.com
DICELLO LEVITT & CASEY, LLC
7556 Mentor Avenue
Mentor, Ohio 44060
Telephone: 440-953-8888
Facsimile: 440-953-9138
*Counsel for Defendants Air Tool Service
Company, n/k/a X5432, Inc. and Rick J.
Sabath*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of August, 2020 a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties not receiving service through the Court's electronic filing system will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

Brian P. Muething
bmuething@kmklaw.com
Jacob D. Rhode
jrhode@kmklaw.com
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202

*Counsel for Plaintiffs*
*ATSCO Holdings Corp. and*
*Hy-Tech Machine, Inc.*

/s/ Tim L. Collins
*One of the Attorneys for Defendants Air Tool*
*Service Company, n/k/a X5432, Inc. and Rick*
*J. Sabath*