# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **ATSCO HOLDINGS CORP. ET AL.,** | ) | **CASE NO.1:15CV1586** |
| | ) | |
| **Plaintiffs,** | ) | **SENIOR JUDGE** |
| | ) | **CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **AIR TOOL SERVICE CO. ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, SR. J:**

This matter is before the Court on Defendants' Joint Motion for Findings of Fact and Conclusions of Law and for a Judgment Finding Against Plaintiffs on their Amended Complaint. (ECF # 126).  For the following reasons, the Court grants, in part, Defendants' Joint Motion and orders additional briefing as described below.

The parties to the above action have requested, and the Court has agreed to determine the claims in this case in a most unusual manner.   The parties have requested that the Court make Findings of Fact and Conclusions of Law to determine the claims in this case entirely on a paper record and without any evidence or testimony in open court unless the Court determines such testimony is necessary.  The parties have submitted deposition transcripts, videotapes of the depositions and have submitted exhibits for the Court's consideration.  The parties have further agreed that, should the Court find such presentation of the claims not well taken, Defendants

will present their  evidence with final arguments and/or briefing thereafter.  It is on this exotic

procedural posture that the Court is requested to adjudicate the claims.

By way of background, according to Plaintiffs' Amended Complaint, Plaintiffs ATSCO

Holdings Corp. and Hy-Tech Machine, Inc. are Delaware corporations with principal places of

business in Pennsylvania.  Defendant Air Tool Service Co. is an Ohio corporation and Defendant

Rick Sabath, Air Tool Service Co.'s sole shareholder, is a North Carolina resident.   The case is

here on the Court's diversity jurisdiction.

The claims in this case arise out of an Asset Purchase Agreement ("APA") executed on

August 13, 2014, wherein Plaintiffs purchased nearly all the assets of Defendant Air Tool for

$7,658,540.  The purchase price was to be adjusted pursuant to a closing statement and working

capital adjustment.   Pursuant to the agreement, $387,500 has been placed in escrow in

connection with the capital adjustments and to deal with any disputes.

According to Plaintiffs' Trial Brief, Defendants made several representations and

warranties, including:   1) the financial statements were true and accurate; 2) there were no debts

or liabilities outside those reflected in the balance sheet or financial statements; 3) they were the

owners of all the Intellectual Property used in its business operations; 4) its inventories were

finished and saleable; and 5) it owned the assets listed in the agreement and these assets were

well maintained and in good working condition.   After closing, Plaintiffs learned that these

representations and warranties were untrue.

Plaintiffs allege that certain grinders and grinder part inventories intended for a customer,

ATA, were non-saleable.  These were valued at $93,313.  Two tools manufactured for Michigan

Pneumatic were non-saleable.   These were valued in the agreement at $13,000.  Parts

2

manufactured for a company, TorcUp, were defective.  These were valued at $8,000.  Other parts and assemblies valued in the agreement at $90,000, were unusable or unrepairable.

Equipment sold to Plaintiffs also were in poor condition, causing loss to Plaintiffs.  These include a computerized numerical controlled manufacturing machine, the Okuma MacTurn, that stopped functioning shortly after closing, costing Plaintiffs $32,714.36 to repair and will require an additional $45,000 in parts and $30,000 in labor charges to make the machine operational.  Due to the Okuma's break down, Plaintiffs have lost $100,000 in productivity.  Without a sufficient replacement, Plaintiffs cannot continue the manufacturing business, costing them an additional $130,000.   Defendants further kept payments rightfully belonging to Plaintiffs in the amount of $2,715.42.

Despite Defendants' representations, third parties have disputed the ownership of certain intellectual property sold by Defendants to Plaintiffs.  There were also $20,000 in liabilities owed to third parties that Defendants did not disclose in the balance sheet.

Plaintiffs further alleges $1,109.50 was paid to Defendant from a third party vendor when that payment should have gone to Plaintiffs.  The APA gives Plaintiffs a working capital adjustment pursuant to a contractual formula.  Under that formula, Plaintiffs allege they are entitled to $100,928.

In addition, certain plans and drawings were found to be inaccurate or incomplete resulting in damages of $127,250.

As a result, Plaintiffs allege Breach of Contract and Unjust Enrichment claims against Defendants.

Defendants counterclaimed for the escrowed amount of $387,500, contending they made

no false representations.  According to Defendants, Plaintiffs had ample opportunity prior to closing to inspect all inventory, equipment, balance sheets and accounts but failed to do so. Defendants further allege Plaintiffs failed to take adequate steps to protect the assets and inventory post-closing.   Defendants allege they complied with all contractual requirements, yet Plaintiffs have breached the agreement by failing to release the escrowed funds.

Specifically, Defendants argue Plaintiffs' failure under the terms of the APA to timely complete an inventory and submit to Defendants an Inventory Acknowledgment precludes recovery on any working capital adjustment.

Defendants further contend Plaintiffs stipulated to judgment on Defendants' Counterclaim on the MacTurn Inefficiency and Work Performed Elsewhere claims and MacTurn Maintenance.  Also, Plaintiffs' need, but do not, have expert witness testimony on their MacTurn claims.

Defendants allege their contract with Plaintiffs contains a $75,000 indemnification threshold such that Defendants are not liable for losses below the $75,000 threshold.

Lastly, Defendants allege they will prove at trial that Plaintiffs waived any contract claims.

**<u>Defendants' Motion</u>**

Defendants contend they are entitled to judgment on Plaintiffs' remaining claims. Regarding Plaintiffs' contract claims, Defendants argue:

1) Plaintiffs' breach of contract on the working capital adjustment agreement found in Section 2.3 of the Asset Purchase Agreement is meritless because Plaintiffs have failed to demonstrate by competent evidence that they complied with the prerequisites required under the

APA to arrive at a working capital adjustment.  Plaintiffs have failed to demonstrate that Defendants misrepresented the nature or quality of the inventory in question.  Plaintiffs have failed to demonstrate they supplied an inventory roll-back account within twenty days of closing per the express terms of the contract.   Plaintiffs were required under the APA to provide an Inventory Acknowledgment within twenty days of closing.  They did not.  Plaintiffs were further required under the APA to utilize the method used to prepare the Audited Financial Statements. They did not.  Finally, Plaintiffs, per the APA, were required to comply "with the Seller's past practices, including giving effect to  reasonable  allowances  for bad  debt,  Inventory  shrinkage and  obsolescence,  and  reasonable reserves for customer returns, allowances and Rebates." (APA 2.3.2.2).  Yet, Plaintiffs' representatives did not even know what Defendants'/Sellers' practices were so they clearly did not utilize them.  Instead, they imposed their own practices which were not authorized under the terms of the APA.  As such, Plaintiffs failed  to comply with the required terms of the APA and Plaintiffs' claim for working capital adjustments must fail.

**2) MacTurn  Inefficiency  and  Work  Performed  Elsewhere;  MacTurn Maintenance and MacTurn Replacement**

Defendants further argue Plaintiffs cannot demonstrate they are entitled to damages arising from the alleged problems with the MacTurn machine.  The MacTurn is a computer numerical control ("CNC") machine that acts as both a lathe and a mill.  Upon purchase, Plaintiffs had no in-house staff member who could diagnose or service issues with the machine. Instead, Plaintiffs relied on an outside service professional.  Plaintiffs principal, Patrick Curry, testified on deposition that he was not capable of diagnosing what was or was not wrong with the

MacTurn and could not say whether the transportation of the MacTurn from Ohio to Pennsylvania caused any damage to the machine.

Plaintiffs failed to obtain expert testimony to prove the MacTurn was not in compliance with the representations and warranties made in the APA at Section 3.17.   Plaintiffs possessed the MacTurn for five months before it began to operate erratically.  The APA required that the MacTurn operate as warranted at the time of possession.  There is no evidence that it did not operate as warranted at that time.

The APA further warranted that Defendants maintained the MacTurn according to industry standards, yet, Plaintiffs offer no evidence that Defendants' maintenance fell below the standard.  Plaintiffs have offered no evidence of the industry standards.  Finally, the APA warranted that the MacTurn would be suitable for use in business as currently conducted, yet Plaintiffs offer no testimony on what the MacTurn's use was and have admitted they possess no knowledge of how Defendants conducted business at the time of the sale.  Thus, their claim on the MacTurn fails.

**Waiver**

According to Defendants, under the express terms of the APA Section 11.5(c), the parties agreed that their sole remedies were as follows:

> The parties acknowledge and agree that their sole and exclusive remedy with respect to any and all Claims (other than Claims arising from fraud, criminal activity or willful misconduct on the part of a party hereto in connection with the transactions contemplated by this Agreement) for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement, shall be pursuant to the indemnification provisions set forth in this Article XI. In furtherance of the foregoing, each party hereby waives, to the fullest extent permitted under Law, any and all rights, Claims and causes of Action for any breach of any representation, warranty, covenant, agreement or obligation set

6

forth herein or otherwise relating to the subject matter of this Agreement it may have against the other parties hereto and their Affiliates and each of their respective Representatives arising under or based upon any Law, except pursuant to the indemnification provisions set forth in this Article XI.

Because Plaintiffs never sought indemnification, they have waived any breach of contract claims.

In summary, Defendants contend Plaintiffs cannot meet the elements of a breach of contract claim.  The parties both acknowledge a contract governed their respective obligations but Plaintiffs cannot show they fulfilled their obligations as described above.  Moreover, they needed expert testimony on the MacTurn to show Defendants' representations were inaccurate, yet they only offer lay testimony of Plaintiffs' employees who have no expertise on a MacTurn. Plaintiffs have waived their breach of contract claims by failing to pursue their contractual remedies under the Indemnification provision cited above.  In addition, Plaintiffs have failed to produce expert testimony on damages and therefore, they cannot show damages with any reasonable certainty.

Perhaps more problematic is the fact that at the bench trial in 2020, Plaintiffs dismissed certain claims and consented to judgment on Defendants' own Breach of Contract counterclaim. In doing so, Plaintiffs necessarily conceded that Defendants fulfilled their obligations under the contract.  Consequently, they cannot logically maintain their own breach of contract claim in light of this consent.

Finally, where a contract exists, no claim for unjust enrichment may lie.  Here, both parties admit to the existence of a contract therefore, Defendants are entitled to judgment on Plaintiffs' unjust enrichment claim.

7

**Plaintiffs' Opposition**

Plaintiffs allege they paid $7.600,000.00 to purchase substantially all the assets of Defendants' business via the APA.  At Section 3.17 of the APA, Defendants represented and warrantied that those assets were in good working order and were sufficient to operate the business as Defendants had in the past.  Based on the testimony of three witnesses, Plaintiffs can show Defendants' representations and warranties were not accurate.

The first witness, Joe Molino, Chief Operating Officer and Chief Financial Officer of Plaintiffs' parent company, P & F Industries, Inc., testified that Plaintiffs relied heavily on the representations and warranties in the APA when purchasing the business in order to operate the business as it was operated before the purchase.

The second witness, Jim Aloi, Vice-President of Finance for Plaintiff Hy-Tech, testified that the purpose of their purchase of ATSCO was to get access to Defendants' customers.  However, once operations started with ATSCO-purchased equipment, it was difficult to get quality product from the equipment, in particular the MacTurn.  That machine was regularly unable to produce product and was in fact out of service for nearly four months.  Aloi described the expenses incurred to fix the MacTurn and further testified that Plaintiffs ultimately had to purchase a new MacTurn for $330,000, as Defendants' machine was unreliable.

Plaintiffs' third witness is Patrick Curry, Hy-Techs Operations Manager.  In that position, Curry was responsible for the day-to-day operation of Hy-Techs business, including: quality control, daily manufacturing, shipping and receiving and product development.  Curry testified that the MacTurn was purchased because it reduced certain steps in the manufacturing process as it was both a lathe and milling machine.  Yet, due to its problems, it failed to consistently

produce product for six to eight months.

Plaintiffs oppose Defendants argument that Plaintiffs failed to comply with the prerequisite obligations under the APA, arguing this exact issue was rejected by the Sixth Circuit on appeal which held that Defendants' failure to raise these defenses in their Answer, Motion to Dismiss or Summary Judgment resulted in waiver of these procedural challenges.

Even if they could still raise this issue, the evidence presented shows Defendants failed to engage in any pre-suit resolution as required by the APA, thus further militating against Defendants' argument.

According to Plaintiffs' the APA holds that the warranties in the APA remain for twelve months after the closing date. Therefore, Defendants argument that Plaintiffs cannot show the equipment was defective and did not conform to the representations and warranties made in the APA because they had it for five months is meritless.

Per the APA, Plaintiffs assert they do not need to prove why the MacTurn did not work, they merely need to prove that it did not work as represented in the APA. This they have done with the depositions of Curry and Aloi.

Lastly, Plaintiffs contend they accepted judgment on Defendants' counterclaim because they could not defend the claim based on the Court's ruling which was subsequently overturned by the Sixth Circuit.

## LAW AND ANALYSIS

Defendants move for judgment on partial findings pursuant to Fed. R. Civ. P. 52(c), which reads:

> (c) Judgment on Partial Findings. If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court

9

> may enter judgment against the party on a claim or defense that, under the
> controlling law, can be maintained or defeated only with a favorable finding on
> that issue. The court may, however, decline to render any judgment until the close
> of the evidence. A judgment on partial findings must be supported by findings of
> fact and conclusions of law as required by Rule 52(a).

"In entering judgment under Rule 52(c), the court must set forth specific findings of fact that are

reviewed for clear error." *In re Mod. Plastics Corp.*, 732 F. App'x 379, 385 (6th Cir. 2018)

*Sharp v. United States,* 401 F.3d 440, 442 (6th Cir. 2005).

**<u>Unjust Enrichment</u>**

Defendants move for judgment on Plaintiffs' Unjust Enrichment claim because neither

side denies the existence of a contract that governs the claims and relief sought in this case.

Both sides have claimed breach of the contract and argue for their respective positions based on

the same.   Each parties' Motion and Opposition brief are peppered with citations to and

arguments from the APA.  When the subject matter of a claim is governed by a contract, a claim

for unjust enrichment on the same subject matter cannot lie.  See  *Borden v. Antonelli Coll.*, 304

F. Supp. 3d 669, 678 (S.D. Ohio 2018) *citing  Davis & Tatera, Inc. v. Gray–Syracuse, Inc.,* 796

F.Supp. 1078, 1086 (S.D. Ohio 1992) ("In Ohio, [unjust enrichment] claims cannot be brought

where the subject matter of the claim[ ] is governed by a contract between the parties")

(Kinneary, J.); *Retirement Ctrs. of Am. v. St. Leonard Ctr.,* Case No. C–3–90–343, 1992 WL

1258517, at *9, 1992 U.S. Dist. LEXIS 22744, at **33–34 (S.D. Ohio July 8, 1992) ("one may

not recover for unjust enrichment where an express contract between the parties covers the same

subject as the claim of unjust enrichment").

Because the Court finds on the evidence and arguments before it that the APA governs

the subject matter of the parties' dispute, Plaintiffs' Unjust Enrichment claim fails and

Defendants are entitled to judgment on the same.

**Issues Requiring Additional Briefing**

Defendants argue that Plaintiffs cannot prevail on their Breach of Contract claims because Plaintiffs consented to judgment on Defendants' Counterclaim for Breach of Contract. Under Ohio law, "a plaintiff must present evidence on several elements to successfully prosecute a breach of contract claim.  Those elements include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Kline v. Mortg. Elec. Sec. Sys.,* 154 F. Supp. 3d 567, 603 (S.D. Ohio 2015), aff'd sub nom. *Kline v. Mortg. Elec. Registration Sys., Inc.,* 704 F. App'x 451 (6th Cir. 2017)  *Doner v. Snapp*, 98 Ohio App.3d 597, 649 N.E.2d 42, 44 (1994).  One of the elements requires proof that Plaintiff, or in this case, Defendants, as they are the counterclaimant, performed their obligations under the contract. According to Defendants, Plaintiffs cannot assert on one hand Defendants breached the contract, while on the other hand consenting to judgment on the counterclaim which means they accepted judgment that Defendants performed under the contract.  This would result in a legal absurdity.

Plaintiffs respond that "the counterclaim judgment was on the state of permitted claims and evidence.  Plaintiffs could not at that time do anything to defend against the counterclaim because, said with respect, the Court had wrongly (per the Sixth Circuit) prevented Plaintiff from the introduction of evidence on the lion's share of their claims.  The reversal of that judgment means that Plaintiffs necessarily now can and have defended against the counterclaim.  To side with Defendants on this issue is to give them the spoils of a victory that was facilitated only through an evidentiary and legal error."

11

Pursuant to the parties' Stipulation and Agreed Order Regarding Trial at paragraph 12, the Court may order additional arguments from counsel on any subject raised by the parties in their filings.  Therefore, the Court orders Supplemental Briefs of no more than ten pages on the following issues:

- Was the Consent Judgment itself or its legal effect on the Plaintiffs' Breach of Contract claims raised by either party or the Court of Appeals on appeal?

- If so, what effect, if any, does the Sixth Circuit's silence on the Consent Judgment have on Plaintiffs' Breach of Contract claims and the Consent Judgment?

- If not, what effect, if any, does the failure to raise the issue have on Plaintiffs' Breach of Contract Claims and the Consent Judgment?

**Claims Remaining**

According to Defendants, through dismissal, waiver or abandonment, Plaintiffs have the following claims remaining:  claim for Working Capital Adjustment and claims relating to the MacTurn Machine.  Plaintiffs do not disagree with Defendants' identification of the claims remaining in the case in their Opposition Brief, but Plaintiffs' Trial Brief contains claims outside those argued in Defendants' Motion.   The parties are ordered to include in their Supplemental Brief whether there is a dispute on what claims remain, or do the parties agree that Defendants have accurately represented the remaining claims in their Joint Motion?

The parties shall submit their Supplemental Briefs addressing the questions above to the Court no later than October 14, 2021.  The briefs shall not exceed ten pages.

Therefore, for the following reasons, the Court grants judgment for Defendants, in part, on Plaintiffs' Unjust Enrichment claim.  The Court Orders Supplemental Briefs on the issues of

the Consent Judgment and Remaining Claims to be filed with the Court no later than October 14, 2021.

IT IS SO ORDERED.


 ./s/Christopher A. Boyko
CHRISTOPHER A. BOYKO
Senior United States District Judge